**Mary Ann ABRAMS, Plaintiff-Appellant,**

v.

**Donald E. JOHNSON et al.,
Defendants-Appellees.**

**No. 75–1710.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 11, 1975.

Decided April 29, 1976.

Robert E. Sweeney, Sweeney, Mahon & Vlad, Cleveland, Ohio, for plaintiff-appellant.

Fredrick M. Coleman, U. S. Atty., Joseph A. Cipollone, Cleveland, Ohio, for defendants-appellees.

Before EDWARDS and MILLER,* Circuit Judges, and CHURCHILL,** District Judge.

EDWARDS, Circuit Judge.

This case presents two important issues. The first is whether a Title VII civil rights employment discrimination case brought by a federal government employee under 42 U.S.C. § 2000e–16(c) (Supp. II, 1972) entitled her to a trial de novo before the United States District Court. We answer this question "Yes."

The second is whether the District Judge properly dismissed appellant's claim of racial discrimination in the Veterans Administration's choice of a white female applicant named Dolores Wehner for the post of Supervisory Clerk at the Brecksville, Ohio, Veterans Administration Hospital over appellant Mary Ann Abrams, a black woman who scored highest when qualified applicants were certified by a rating panel under

the Veterans Administration's own promotion plan. Our consideration of this entire record convinces us that plaintiff-appellant carried the burden of proving a prima facie case of racial discrimination and we vacate the District Court's judgment and remand the case for reconsideration under a different allocation of the burden of proof than that which the court employed.

## THE TRIAL DE NOVO ISSUE

In 1972 Congress took steps to extend to federal employees the protections against discriminatory employment practices which employees in private industry had enjoyed since 1965. See 42 U.S.C. §§ 2000e–2, 2000e–5 (1970). The antidiscrimination provisions pertaining to federal employees were adopted in 42 U.S.C. § 2000e–16(a) (Supp. II, 1972) and were made enforceable in the first instance by the Civil Service Commission. 42 U.S.C. § 2000e–16(b) (Supp. II, 1972). In 42 U.S.C. § 2000e–16(c) (Supp. II, 1972)[1] Congress also provided that within thirty days of receipt of notice of final adverse action by the Civil Service Commission "an employee . . . may file a civil action as provided in section 2000e–5 of this title."

Section 2000e–5 is the section which grants employees in private industry a "civil action" for racial discrimination. It does not in express terms grant private employees a "trial de novo," but it is now settled law that its provisions have that effect. In the concluding paragraph of Justice Powell's opinion for a unanimous Supreme Court in *Alexander v. Gardner-Denver Co.*,

---

* Judge Miller concurred in this opinion prior to his death on April 12, 1976.

** Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, Southern Division, sitting by designation.

1. (c) Within thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Civil Service Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after

one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Civil Service Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant. 42 U.S.C. § 2000e–16(c) (Supp. II, 1972).

415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Court held:

> We think, therefore, that the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII. The federal court should consider the employee's claim *de novo*. The arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate.[21]
>
> [21] We adopt no standards as to the weight to be accorded an arbitral decision, since this must be determined in the court's discretion with regard to the facts and circumstances of each case. Relevant factors include the existence of provisions in the collective-bargaining agreement that conform substantially with Title VII, the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators. Where an arbitral determination gives full consideration to an employee's Title VII rights, a court may properly accord it great weight. This is especially true where the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record. But courts should ever be mindful that Congress, in enacting Title VII, thought it necessary to provide a judicial forum for the ultimate resolution of discriminatory employment claims. It is the duty of courts to assure the full availability of this forum.

*Alexander v. Gardner-Denver Co., supra,* at 59–60, 94 S.Ct. at 1025, 39 L.Ed.2d at 164.

*See also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 799, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668, 676 (1973).

We recognize, of course, that the *Gardner-Denver* case dealt with private rather than federal employees. But in 42 U.S.C. § 2000e–16(d) (Supp. II, 1972) Congress said that the provisions construed above should govern civil actions brought by federal employees:

> (d) The provisions of section 2000e–5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder.

■ Even without the Supreme Court's explicit establishment of de novo trial for private employees under Title VII, we would have believed that Congressional grant of a right to "file a civil action" should be construed as a right to a "trial" rather than to an appeal upon the record made before the Civil Service Commission. Of course, as indicated in footnote 21 from *Gardner-Denver* above, the District Court has discretion to admit the prior record (there arbitral) and to give weight to the prior decision. But as we understand trial de novo, admission of an administrative record by no means precludes the taking of additional evidence or even rehearing the testimony of key witnesses.

We shall not proceed further with this discussion. The ambiguities of the legislative history have been amply discussed in the conflicting decisions listed below. This exact issue is now pending before the Supreme Court in *Chandler v. Johnson,* 515 F.2d 251 (9th Cir. 1975), *cert. granted sub nom. Chandler v. Roudebush,* 44 U.S.L.W. 3179 (U.S. Oct. 6, 1975) (No. 74–1599). We state our view so that it can be weighed along with the generally similar views of the Third, Seventh and D.C. Circuits (*See Sperling v. United States,* 515 F.2d 465 (3d Cir. 1975), *petition for cert. filed,* 44 U.S. L.W. 3107 (U.S. Aug. 15, 1975) (No. 75–247); *Caro v. Schultz,* 521 F.2d 1084 (7th Cir. 1975), *petition for cert. filed sub nom. Simon v. Caro,* 44 U.S.L.W. 3346 (U.S. Dec. 1, 1975) (No. 75–784); *Hackley v. Roudebush,* 520 F.2d 108 (D.C.Cir. 1975)) and with conflicting views of the Eighth, Ninth and Tenth Circuits (*See Haire v. Calloway,* 526 F.2d 246 (8th Cir. 1975); *Chandler v. Johnson, supra; Salone v. United States,* 511 F.2d 902 (10th Cir. 1975), *petition for cert. filed,* 43 U.S.L.W. 3684 (U.S. June 19, 1975) (No. 74–1600)).

On this issue we reject the contentions of the government. The District Judge essentially granted appellant a trial de novo, although he admitted the full administrative record and did set certain limits on

additional evidence. We have written on this matter partly to express our circuit's point of view on an important issue, and partly to make clear that on the remand which we subsequently order, the District Judge has wide discretion to hear any evidence which would be admissible in a case containing no prior record if it is tendered and such evidence is not objectionable as redundant or cumulative.

## THE RACE DISCRIMINATION ISSUE

■ This controversy begins with the Veterans Administration's announcement on June 16, 1972, that there was an opening for the position of Supervisory Clerk (Chief, Ward Administration Section) at a GS–7 classification at a salary of $9,053–$11,771 at the Brecksville, Ohio, Veterans Administration Hospital. Appellant Mary Ann Abrams, who then was employed at the hospital as a secretary-stenographer with a GS–5 classification, applied for the position under the hospital's Merit Promotion Plan. The announcement of the vacancy for the position of Supervisory Clerk stated that applications would be accepted under the Merit Promotion Plan. It also stated:

It is our policy to fill vacancies by selection from the 'best qualified' applicants available. Normally vacancies will be filled through the promotion plan; however, to insure selection from the 'best qualified' persons, concurrent consideration may be given persons known to be available for transfer, reinstatement, reassignment, voluntary change to lower grade, or by appointment from the outside. Regardless of the placement action, there will be no discrimination because of sex, race, color, religion, national origin, lawful political affiliation, marital status or physical handicap.

The Merit Promotion Plan called for the rating of applicants for promotion by a rating panel appointed by the hospital superintendent. The panel rated applicants as to basic qualifications, additional experience, education and training, employee awards, outside activities, and supervisory evaluations. According to the plan the panel makes a numerical rating of each applicant without knowing the applicant's name and within five days forwards an alphabetical list of those eligible to the "selecting official." The selecting official then interviews the eligible candidates and within five days announces the selection.

In this instance on July 25, 1972, the five applicants with the highest ratings and the individual scores were certified to the selecting official, James E. McGhee. Their scores were as follows:

| | |
|---|---|
| Mary Ann Abrams | 93 |
| Lillian Mark | 92 |
| Joan H. Allen | 89 |
| Miriam Merleno | 89 |
| Bernice Bene | 89 |

A supplement dated the same day was attached to the certificate stating: "The name of Delores M. Wehner, Supervisory Clerk, GS–8 VA Hospital, Cleveland, Ohio, is referred for consideration for reassignment and change to lower grade."

McGhee testified that the next day, July 26, 1972, he went to the VA Hospital in Cleveland on business and there interviewed Miss Wehner whom he had heard highly recommended by her supervisor. Without interviewing the persons on the certified promotion list before making his decision, as contemplated by the promotion plan, McGhee decided to offer the position to Miss Wehner. The record indicates, however, that Wehner had been rated 83 by the same rating panel—ten points lower than appellant. Subsequently, McGhee was instructed by the Acting Superintendent of the hospital to interview all of those on the certified promotion list. McGhee did so, telling each that he had already made his decision to offer the position to someone else. As will be detailed, McGhee then and later defended his appointment by contending that on the basis of long experience and a good work record in the same duties which were involved in the post to which he appointed her, he considered Wehner the "best qualified" applicant.

Appellant charged (and somewhat equivocally the District Judge appears to agree)

that prior to 1972 there had been "a distinct pattern of discriminatory promotion practices . . . established by the hospital officials." The District Judge recited appellant's part in this history:

I go further, though. Mrs. Abrams testified about certain previous attempts for promotion, the first one in January of 1966, when she says that she was ranked highly qualified for promotion to secretary of the Assistant Hospital Director, but a person with a lower ranking was accepted.

She testified that in May of 1969 she was ranked highly qualified for promotion to secretary to Chief of Staff, but that a lower ranking applicant was selected.

She testified that in November of 1970, she was one of either—it was not clear to me whether there were 10 or 12 applicants—who were ranked highly qualified for promotion, to Chief, Ward Administration Section, Medical Administration Division—indeed, the very same position that we are considering as the 1972 complaint—and that a Mrs. Ney was preselected.

The evidence would certainly suggest that Mrs. Ney very may well have been preselected. She was the secretary to the Chief, as I read the record, of that division; and it does not suggest that she had had any particular supervisory experience except for a short period at Metropolitan General Hospital, Cleveland.

Mrs. Ney, "the preselected" preceding Supervisory Clerk, left the Brecksville Hospital in February of 1972. The announcement of the acceptance of applications under the Merit Promotion Plan was not made until June 16, 1972. The District Judge found that Miss Wehner made her application for transfer and demotion to the position to be filled three days later on June 19, 1972. The District Judge also noted concerning Wehner's promotion:

The record that was added included sheets taken from Miss Wehner's personnel file. There is no explanation of why it was that there was a temporary promotion to GS-8 and a continuation or extension of that promotion; it isn't clear from the record exactly why that was done. But it is evident that it was done and that she did achieve a Grade GS-8 as a result of these things that occurred between roughly April of 1972 and the time when she made her application for this position.

As we have noted, however, the record indicates that a list of five qualified applicants was certified on July 25, with appellant at the top of the ratings. Miss Wehner's name was not on the list, but a supplement was attached to the list referring her name "for reassignment and change to lower grade."

Theoretically, under the Merit Promotion Plan, the names of the highly qualified applicants were supposed to have been supplied alphabetically to the selecting officer without the numerical scores. McGhee was supposed to interview the applicants before making his selection and without knowing their scores. Actually, this record shows that he did receive the ratings, thus being made fully aware of the appellant's top standing and her 10 point higher score than Miss Wehner's. In addition, as we have noted, the very next day, July 26, 1972, he went to the Cleveland Hospital, interviewed Miss Wehner, and made his selection of her without prior thereto having interviewed any of "the highly qualified" applicants under the Merit Promotion Plan. It appears that Miss Wehner was willing to take the appointment—a demotion of one grade for her—because the Brecksville Hospital was closer to her home than the Cleveland Hospital.

After reviewing the administrative and Civil Service Commission record and taking additional testimony, the District Judge discussed Mrs. Abrams' charges of discrimination and concluded that racial discrimination was "not established by the necessary preponderance of the evidence, which is the burden cast on the plaintiff."

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set out a three

step procedure for the determination of racial employment discrimination cases under Title VII:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

> \*   \*   \*   \*   \*   \*

> The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection.

> \*   \*   \*   \*   \*   \*

On remand, [the employee] must . . . be afforded a fair opportunity to show that [the employer's] stated reason for [the employee's] rejection was in fact pretext. *McDonnell Douglas Corp. v. Green, supra* at 802, 804, 93 S.Ct. at 1824–1825, 36 L.Ed.2d at 677–679.

*Accord, Franklin v. Troxel Mfg. Co.*, 501 F.2d 1013 (6th Cir. 1974).

As indicated earlier, we believe that appellant had made out a prima facie case of discrimination which had the effect of shifting the burden of proof to the government to show that its decision to fill the position with Miss Wehner was a nondiscriminatory decision based on sound business reasons.

The Act proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation. The touchstone is business necessity. If an employment practice which operates to exclude Negroes cannot be shown to be related to job performance, the practice is prohibited. *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158, 164 (1971).

*See also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2296, 45 L.Ed.2d 245 (1975).

■ We are well aware that McGhee's testimony was that he based his selection solely on his judgment that Miss Wehner's experience and capability in performing the work of Supervisory Clerk at the Cleveland VA Hospital justified his selecting her without previously considering any of the other candidates. This may, of course, be the case, since neither the District Judge nor we are privileged to know the subjective thoughts and feelings of the selecting official given this absolute authority. It is, however, impossible for a record like this one to be written without convincing those intimately involved that the whole Merit Promotion Plan as operated was a cruel farce. Absolute discretion over employment decisions where subjective race prejudice may control (perhaps even without the executive's knowledge) is no longer consistent with our law. *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir. 1976); *Rowe v. General Motors Corp.*, 457 F.2d 348 (5th Cir. 1972).

If this record did not show that in the 1970 promotion to this same position, Mrs. Ney had been preselected without any prior experience for this very job over appellant, who then also was rated as more highly qualified, if appellant had not been rated 10 points superior to Miss Wehner for the now disputed promotion to the same job (including a four point higher rating on "supervisory evaluation"), we might not be so definite about our holding that at least a prima facie case of discrimination had been made out. As the matter stands, however, we vacate the judgment of the District Court and remand the case for the government to go forward with proofs which seek to meet the legitimate, nondiscriminatory rejection standards set forth in *McDonnell Douglas Corp. v Green, supra*, and *Griggs v. Duke Power Co., supra*.

Thereafter the appellant may offer rebuttal (*McDonnell Douglas Corp. v. Green, supra* at 804, 93 S.Ct. at 1825, 36 L.Ed.2d at 678) and the District Judge should redeter-

mine appellant's claims of racial discrimination.