**Darwin COSBY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. C–2–77–545.**

United States District Court,
S. D. Ohio, E. D.

Jan. 17, 1979.

James W. Rickman, Columbus, Ohio, for plaintiff.

James C. Cissell, U. S. Atty., Nathaniel H. Speights, Asst. U. S. Atty., Columbus, Ohio, for defendant.

## OPINION AND ORDER

DUNCAN, District Judge.

This is an action by plaintiff Darwin Cosby against his employer the Veterans Administration, through its Director, Max Cleland, and against certain administrators at the V.A. Hospital at Chillicothe, Ohio, where plaintiff is employed. Plaintiff, a black man, claims that in being denied a promotion at the hospital he was discriminated against because of his race in violation of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e *et seq.,* and in particular Section 717 of the Civil Rights Act, 42 U.S.C. § 2000e–16, dealing with discrimination against federal employees. Plaintiff further claims the promotion denial violated his civil rights under 42 U.S.C. §§ 1981, 1983, 1985 and 1986.

The cause was tried to the Court; what follows is the Court's findings of fact and conclusions of law.

At the outset the Court notes that Section 717 provides the exclusive judicial remedy for claims of discrimination in federal employment, *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Royal v. Bergland,* 428 F.Supp. 75 (D.D.C.1977), and therefore the Court will consider plaintiff's claim under that law alone. Furthermore, under Section 717(c) of the Act, 42 U.S.C. § 2000e–16(c), only the head of the agency involved is a proper defendant in an action brought under that section. *Royal, supra,* 428 F.Supp. at 76. Consequently the complaint must be dismissed as to defendants Holton and Snetting.

### Plaintiff

Plaintiff is 47 years old and has been employed at the Chillicothe V.A. Hospital for 19 years. For the past 12 years he has been a "team leader" in the Building Management Service with supervisory responsibility over three buildings and three to four men. Plaintiff testified at the hearing that he was the only team leader at the hospital charged with responsibility over three buildings. Plaintiff's duties as a Housekeeping Aid (grade WL–4) consist of providing janitorial services for the three buildings assigned to him, as well as supervising the work of the men under him.

### Promotion Procedure

On June 11, 1976, the personnel office of the V.A. Hospital posted a promotional opportunity announcement for the position of Housekeeping Aid Foreman (grade WS–2). This position came open as a result of the

retirement of Richard Scott, a black man, who previously held the job.

According to the announcement, and the testimony of David Lanning, a hospital personnel management specialist, there were six factors utilized in screening applicants for the foreman position. They were:

1. Performance Appraisal
2. Experience
3. Supervisory Potential    .
4. Education
5. Training, Outside Activities, Self-development
6. Awards

A merit selection panel composed of hospital personnel screened the applicants for the position and designated four of them as "highly qualified" for the job. Plaintiff Cosby was one so designated along with three other persons including Mickey Long, the applicant who was subsequently chosen. The panel rated the applicants on the basis of the factors listed above and assigned each a numerical score. The names of these "highly qualified" candidates were submitted, without the merit scores, to a "selecting official" who under this procedure is given the final discretionary choice of the new foreman. Ideally the selecting official's decision, although discretionary, is guided by his impressions formed in a personal interview with the applicants and a review of their personnel files. In any event, his choice is final.

### The Complaint

The essential allegation of plaintiff's complaint is that the decision of the selecting official to choose Mickey Long over plaintiff for the position of Housekeeping Aid Foreman was infected with racial prejudice. This is the case, according to plaintiff, because there was no legitimate nondiscriminatory reason for making such a choice. A review of the record on this matter is instructive.

As stated, after screening by the promotion panel, the names of the four persons designated as highly qualified were submitted to a selecting official charged with making the final selection of the new foreman. The record, which includes copies of the merit promotion panel scores on V.A. form 7051B–1, indicates that Mr. Cosby received the highest score—49—of the four candidates selected as highly qualified. Mickey Long received a score of 43.

The selecting official involved in this case was Laverne Snetting, Chief of the Building Management Service at the hospital. Mr. Snetting testified that he received the names of the four persons named by the promotion panel, but that under the selection procedure he did not receive the form 7051B–1 raw data scores assigned to each candidate by the panel. He did however receive several other forms evaluating the candidates. V.A. form 5–4677, for example, entitled "Job Element Rating Sheet for In-service Placement" evaluates the employee on the basis of his predicted ability and potential for the open position, based on the factors listed in the promotion announcement. Once again Mr. Cosby received a higher score than did Mr. Long, 3.0 to 2.8 respectively. The Court notes in particular that on the element of "ability to supervise," designated by the promotion announcement as the key or "screen-out element," Mickey Long was rated by his supervisor as "barely acceptable," while plaintiff Cosby was rated "satisfactory." Further, in the element of "housekeeping practices and procedures," unquestionably another key qualification for a housekeeping foreman, Mr. Cosby was rated satisfactory, while Mickey Long was rated only "potentially satisfactory." Although it is true that Long had not yet performed duties in the housekeeping area and thus could only be rated on his estimated potential in such a job, it is noteworthy that Long was rated by his supervisor—the same supervisor who rated plaintiff Cosby—as only potentially satisfactory. Snetting specifically testified at the EEO hearing that he recalled seeing this evaluation.

Thus, whereas Cosby was presented to the selecting official Mr. Snetting as being satisfactory in the crucial areas of ability to supervise and housekeeping practices and procedures, Mickey Long was rated as only

"barely acceptable" and "potentially satisfactory" in the same categories. Further, this evaluation was made for both candidates on July 2, 1976, only five days before Snetting made his decision. The evaluation spoke specifically to the candidates' potential ability to supervise and to do the work involved in the new job, and it clearly favored Mr. Cosby. Nevertheless, Snetting chose Mickey Long for the job.

Snetting testified that he based his selection of Mickey Long on three criteria—the personal interview, a review of the personnel files of each candidate, and his observation of Long's job performance. In large part, Snetting stated, he was influenced by Long's successful supervision of a project which involved the refurbishing of two buildings in the V.A. hospital complex. According to Snetting, Long handled this job in a capable manner and was responsible for getting the project completed ahead of schedule. Long was subsequently given an award by the hospital for his service on this project. Despite the evidence that Long did oversee this remodeling project, there was somewhat conflicting testimony at trial concerning the scope of Mickey Long's other duties. Cosby and another employee, William O'Connor, who had worked with Cosby and Long both stated that Long's job was to drive a truck and haul furniture. O'Connor further stated that in his experience Long was a less than conscientious employee. He was regularly late for work and according to O'Connor, Long "clowned around" on the job. Other testimony at trial showed that Long had once been officially reprimanded for sleeping on the job. O'Connor stated that Long was on very friendly terms with the supervisors at the V.A. and spent considerable time drinking coffee in their offices. In sum, the gist of O'Connor's testimony was that Long compensated for a rather haphazard performance record by currying favor with his rating supervisors, one of whom was the selecting official in this case, Laverne Snetting.

The Court notes that O'Connor had also unsuccessfully applied for the foreman's job at issue here, and therefore his testimony must be evaluated with some caution. Nevertheless, the record of the Equal Employment Opportunity complaint hearing held at the hospital before a neutral attorney-examiner, Mr. William Polland of the V.A. regional office in Milwaukee, which record has been made part of the record before this Court, contains corroboration of O'Connor's testimony in the form of testimony of numerous co-workers of Long and Cosby whose unanimous opinion was that Cosby was the more qualified of the two men for the job. For instance, Mr. Richard Scott, the retiring housekeeping aid foreman, testified at the EEO hearing that in his opinion Long would not make a good supervisor. Scott occasionally supervised Long when Long was assigned to his buildings, and Scott stated that he had in the past caught Long "goofing off, sitting down, and sleeping." It was Scott who had given Long the written reprimand for sleeping on the job.

Mr. Cosby testified at trial that he felt he had been the victim of pre-selection in this case. This impression was particularly strong in his mind after the interview between the plaintiff and the selecting official, Mr. Snetting. Cosby testified that when he arrived at Snetting's office for his interview Snetting's initial statement was to the effect that Cosby should not be disappointed if he were not to get the job since there would be other such positions opening up in the future. Cosby stated that Snetting did not even discuss the subject of the vacant position, nor did he ask Cosby any questions relating to his potential or qualifications for the job. Instead, said Cosby, Snetting limited their discussion to the subject of new mop sinks which had been installed in Cosby's buildings. In sum, Cosby testified that it was his distinct impression that Snetting had made up his mind to hire Mickey Long before he ever interviewed Cosby. That Long had in fact been so "pre-selected" was also evidenced by O'Connor's testimony. He stated that more than a month prior to the selection he had complained to Martin Addy, a foreman in the Building Management Service, that Long

would not help move furniture. According to O'Connor, Addy replied that supervisors were not required to do manual work, and that Long had "sort of been designated" as a supervisor. Addy stated at the EEO hearing that if he did make such a statement he did not recall it.

Other testimony at trial indicated that Snetting had neither reviewed Cosby's personnel file prior to his interview nor had he made any personal observation of his work, yet Snetting testified that his choice of Mickey Long was based on those very same factors. He stated that in particular his observation of Long's performance on the remodeling job was crucial in the selection, yet he had never made any attempts to similarly observe Cosby. When asked how this was fair to Cosby and the others, Snetting stated that he could have gotten any information he needed about the others from the personal interviews. He failed to explain why he made no attempt to get such information in his interview with Mr. Cosby. That this interview was perfunctory at best is demonstrated by Snetting's own admission that he was not even aware at the time of the meeting that Cosby had been a team leader for 12 years at the hospital.

Snetting made his selection of Mickey Long on July 7, 1976. Subsequently, on July 28, 1976, plaintiff Cosby filed an EEO complaint, and as stated above, a hearing was held on this complaint before an EEO examiner. Based on the evidence adduced at that hearing, the examiner concluded that Mr. Cosby had been discriminated against on account of his race. Despite this conclusion the hospital director, M. A. Holton, disagreed and found that the discrimination charge had not been sustained. Subsequently Mr. Cosby requested a decision without hearing by the office of the general counsel of the Veterans' Administration. A decision issued by that office on June 20, 1977, ruled against the complainant and found that the evidence did not support the claim of discrimination.

*Discrimination Under Title VII*

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) the Supreme Court set out a three-step procedure for the determination of racial employment discrimination cases under Title VII:

Step 1. The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

Step 2. The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection.

Step 3. On remand, [the employee], must . . . be afforded a fair opportunity to show that [the employer's] stated reason for [the employee's] rejection was in fact pretext.

*See also, Abrams v. Johnson*, 534 F.2d 1226, 1231 (6th Cir. 1976); *Franklin v. Troxel Mfg. Co.*, 501 F.2d 1013 (6th Cir. 1974).

The Supreme Court has made it clear that the *McDonnell Douglas* analysis is a flexible one that must be adapted to each particular case.

The facts necessarily will vary in Title VII cases, and the specification . . . of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations. 411 U.S. at 802 n. 13, 93 S.Ct. 1817; *Furnco Construction Co. v. Waters*, 438 U.S. 567, 575–576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

Upon consideration of all the evidence presented to the Court at trial, including the testimony of employees and supervisors at the Chillicothe V.A. Hospital, a thorough

review of the record including that of the EEO hearing and the findings of EEO Investigator Polland, as well as the argument and briefs of counsel, the Court is of the opinion that plaintiff Cosby has established the prima facie case of race discrimination required by Step 1 of *McDonnell Douglas*. Cosby belongs to a racial minority; he applied for the job of housekeeping aid foreman for which he was clearly qualified; despite his qualifications he was rejected; and after his rejection the V.A. continued to seek applicants from persons of complainant's qualifications, finally choosing a white man, Mickey Long, for the job.

The application of Step 2 has become somewhat more complex following the recent decision of the Supreme Court in *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). There the Court dealt with the question whether in Step 2 the employer is required to "articulate" a legitimate nondiscriminatory reason for its hiring decision, or whether he must "prove" such a reason. The apparent conflict in standards is evident in the following paragraph from *Furnco* :

> When the prima facie case is understood in the light of the opinion in *McDonnell Douglas*, it is apparent that the burden which shifts to the employer is merely that of *proving* that he based his employment decision on a legitimate consideration, and not an illegitimate one such as race. . . . To dispel the adverse inference from a prima facie showing under *McDonnell Douglas*, the employer need only '*articulate* some legitimate nondiscriminatory reason for the employee's rejection.' 438 U.S. at 577–78, 98 S.Ct. at 2950. (Citation omitted.) (Emphasis added.)

In *Sweeney* the Court sent back to the First Circuit Court of Appeals for reconsideration in light of *Furnco* a decision in which the First Circuit had required the defendant state college to *prove* absence of discriminatory motive in order to meet its burden under Step 2. The Supreme Court voted 5–4 to send the case back because it appeared that the Court of Appeals had imposed a heavier burden on the employer than *Furnco* warranted. —— U.S. at ——, 99 S.Ct. 295. The Court reaffirmed the language of *McDonnell Douglas* which required only that the defendant *articulate* a legitimate reason for its decision.

██ Even in view of this semantic wrangle, the Court feels that under either standard the defendant in the present case has failed to meet its burden of proof. Defendant has articulated a reason for its decision to choose Mickey Long over the plaintiff, *i. e.*, that it was the opinion of the selecting official that Long was the more qualified man for the job, based on Long's merit award and purported superior supervisory potential. However, in view of the unequal consideration given by the selecting official to the candidates, as evidenced at trial and in the record, and in view of the persuasive evidence of pre-selection in favor of Mickey Long, the Court is of the opinion that defendant's reason for deciding as it did was not a legitimate one. The dangers inherent in giving a selecting official absolute discretion over promotion selection were well-stated by the United States Court of Appeals for the Sixth Circuit in *Abrams v. Johnson*, 534 F.2d 1226, 1231 (1976). There, in a case also dealing with alleged employment discrimination in an Ohio V.A. hospital utilizing a merit promotion format similar to this one, the Court stated:

> We are well aware that [the selecting official's] testimony was that he based his selection solely on his judgment that Miss Wehner's experience and capability in performing the work of Supervisory Clerk at the Cleveland VA Hospital justified his selecting her without previously considering any of the other candidates. This may, of course, be the case, since neither the District Judge nor we are privileged to know the subjective thoughts and feelings of the selecting official given this absolute authority. It is, however, impossible for a record like this one to be written without convincing those intimately involved that the whole

Merit Promotion Plan as operated was a cruel farce. *Absolute discretion over employment decisions where subjective race prejudice may control (perhaps even without the executive's knowledge) is no longer consistent with our law.* (Citations omitted.) (Emphasis added.)

Similarly in this case, the negligent fashion in which the selecting official screened the "highly qualified" applicants evidences an abuse of discretion and persuades the Court to agree with the findings of the EEO investigator that subjective racial prejudice was a factor in the rejection of the plaintiff for this job. Thus under Step 2 of the *McDonnell Douglas* analysis the Court is of the opinion that the defendant has failed to articulate a legitimate nondiscriminatory reason for the plaintiff's rejection. In determining whether the rationale behind defendant's refusal to promote the plaintiff was in fact "legitimate," the Court must determine if there was a "reasonable basis" for such a refusal. *See, McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817. As stated, given the superior experience and overall superior evaluation of Mr. Cosby over Mickey Long, a man who had had no previous experience whatsoever in the traditional housekeeping area, coupled with the negligent screening of the candidates by the selecting official, the Court concludes that there was not a reasonable basis for the decision made by defendant. Absent a legitimate reason for the defendant's decision, the inference arises that an illegitimate reason, such as race, motivated the decision. *See, Furnco, supra,* 438 U.S. at 575, 98 S.Ct. at 2949. Plaintiff has shown such an inference to be warranted here by making out his prima facie case. Defendant has failed to articulate a legitimate alternative, and the Court consequently concludes that plaintiff has indeed been illegally discriminated against on account of his race.

### Remedy

In fashioning an appropriate remedy, the Court has the duty to eliminate, insofar as possible, the discriminatory effects of the defendant's past actions. Similarly, the Court must seek to discourage like discrimination in the future. Although Congress apparently did not intend Title VII to authorize actions for compensatory and punitive damages, *Gerlach v. Michigan Bell Tel. Co.,* 448 F.Supp. 1168, 1173 (E.D. Mich.1978); *Howard v. Lockheed-Georgia Co.,* 372 F.Supp. 854, 856 (N.D.Ga.1974), a court may order such affirmative action as may be appropriate, which may include the promotion or reinstatement of employees, with or without back pay. *Fisher v. Brennan,* 384 F.Supp. 174 (E.D.Tenn.1974); *aff'd.,* 517 F.2d 1404 (6th Cir. 1975), *cert. denied,* 424 U.S. 954, 96 S.Ct. 1428, 47 L.Ed.2d 359 (1976). A court should award back pay unless exceptional circumstances indicate otherwise. *Head v. Timken Roller Bearing Company,* 486 F.2d 870, 876 (6th Cir. 1973). The Court finds that plaintiff is entitled to recover as back pay the difference between his current salary and the salary he would have earned had he been promoted to the position of housekeeping aid foreman. Furthermore, the V.A. Hospital at Chillicothe, Ohio, is ordered to promote plaintiff to the position of housekeeping aid foreman. If no such position is currently available, then the hospital is required to offer plaintiff a comparable position for which he is qualified and that is commensurate in salary to the position of housekeeping aid foreman.

Plaintiff is also entitled to recover his costs of this action and reasonable attorney's fees pursuant to 42 U.S.C. § 2000e–5(k). The Court will enter final judgment in this action following the submission of a proposed back pay award and a schedule of attorney's fees by plaintiff's counsel within fifteen (15) days following the entry of this order. Counsel for defendant shall have ten (10) days thereafter to respond.

For the reasons stated hereinabove, the action against defendants Holton and Snetting are DISMISSED.

It is so ORDERED.