NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0511n.06

No. 20-3694

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 09, 2021
DEBORAH S. HUNT, Clerk

TRISHA DORAN, M.D.,

    *Plaintiff-Appellant,*

v.

DENIS MCDONOUGH; UNITED STATES
DEPARTMENT OF VETERANS AFFAIRS,

    *Defendants-Appellees.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF
OHIO

Before: BOGGS, GRIFFIN, and MURPHY, Circuit Judges.

BOGGS, Circuit Judge. This employment-termination case comes before us for a second time, with appellant, Trisha Doran, M.D., appealing a summary-judgment ruling that upheld her termination by appellees, the Secretary of the United States Department of Veterans Affairs and the United States Department of Veterans Affairs (jointly referred to as the "VA"). Dr. Doran first challenged her termination through the VA's multi-layered administrative process. Her termination was upheld at each step of this process, including reviews by the VA Medical Executive Board ("MEB"), the VA Administrative Investigation Board ("AIB"), the VA Professional Standards Board ("PSB"), and the VA Disciplinary Appeals Board ("DAB"). Dr. Doran then filed suit in federal court under 38 U.S.C. § 7462, challenging her termination as arbitrary and capricious (the "APA case"). Her termination was upheld by the district court, *Doran v. McDonald*, No. 2:16-cv-532, 2018 WL 806253, at \*21 (S.D. Ohio Feb. 9, 2018), and then by

this court in *Doran v. Wilkie*, 768 F. App'x 340 (6th Cir. 2019). Contemporaneously with her APA case, Dr. Doran also filed a complaint for employment discrimination, which gives rise to this appeal. The parties agreed to stay this case pending a ruling in the APA case. After the ruling in *Doran v. Wilkie*, the parties entered a stipulation of facts in our case, and summary judgment was entered in favor of the VA. This appeal followed. Given the voluminous, well-documented record in this matter, we will focus on the facts and findings relevant to the claims raised in this appeal.

I.      Facts and Proceedings Below

Dr. Doran is a board-certified gastroenterologist and licensed physician in the State of Ohio. She was employed by the Chalmers P. Wylie VA Ambulatory Care Center in Columbus, Ohio from 2008 to 2015. For the first five years, Dr. Doran earned high praise from her supervisors and patients, with annual proficiency reports rating her as "outstanding," the highest possible score. That all changed in 2014, when Dr. Glenn Borchers, who became Chief of Gastroenterology in 2010, took over the annual proficiency review of Dr. Doran's performance, at which time her overall rating dropped to "low satisfactory" to "satisfactory."

The 2013-14 proficiency report covered the period of October 1, 2013, through September 30, 2014. Dr. Borchers reported that Dr. Doran was consistently late or nearly late in completing mandatory training, recredentialing paperwork, and required peer reviews. He noted that her practice style was inefficient, she had higher rates of patient complications than other doctors, she was behind on administrative assignments, and she was frustrated by the amount of work she was required to complete. Dr. Borchers reported her as being distracted or preoccupied.

Dr. Doran claims that this poor review was a result of her complaining about the terms of her employment. Specifically, Dr. Doran alleged that when she was recruited to work for the VA

in 2008 by then Chief of Gastroenterology, Dr. Marc Cooperman, that she had been promised participation in the VA's Educational Debt Reduction Program ("EDRP"), a form of student-debt relief. Dr. Doran never received those EDRP benefits, so she sought and obtained Dr. Cooperman's assistance in getting those promised benefits in 2010 and 2013. Dr. Cooperman, who had become Chief of Staff, informed human resources that he had indeed promised EDRP recruitment benefits to Dr. Doran when she was hired, but she still did not receive EDRP benefits. In 2014, a male physician who had transferred recently to Columbus from another VA hospital, showed Dr. Doran a breakdown of his VA benefits, which included EDRP debt-reduction payments. It was also in 2014 that Congress passed the Veteran's Choice Act doubling EDRP benefits from $60,000 to $120,000 for five years of service. And in 2014, Dr. Doran renewed her complaints about not receiving EDRP payments with Dr. Cooperman and the human-resources department. Dr. Doran alleges that it was after this 2014 complaint that Dr. Borchers wrote Dr. Doran's "low satisfactory" proficiency report. Dr. Doran alleges that this is also when Dr. Borchers began to question her competency, treat her differently than male doctors, and exclude her from his inner circle.

On June 2, 2015, Dr. Cooperman issued Dr. Doran a notice of proposed removal and revocation of clinical privileges based on four charges relating to: 1) the treatment of Patients A, B, and C during esophagogastroduodenoscopy ("EGD") and/or colonoscopy procedures on January 26, 2015, January 27, 2015, and October 17, 2014;[1] 2) inappropriately amending patient medical records; 3) lack of candor in attempting to have nurses corroborate her late addition to medical records of Patient A; and 4) performing a procedure (anal tattooing) on Patient D on June 20, 2014, without appropriate privileges. These charges, particularly those relating to the case of

---

[1] For privacy purposes, patients were anonymized throughout the administrative review process and the APA case. The same anonymizers are used in this opinion.

Patient A, as detailed in *Doran v. Wilkie*, 768 F. App'x at 347-49, 350-52, led to Dr Doran's dismissal in August 2015.

For purposes of this case, the events regarding Patient A are particularly relevant. Patient A, a 53-year-old male, presented on January 26, 2015 for an EGD and a colonoscopy. Despite Patient A's complex medical history (diabetes, hypertension, coronary artery disease, obesity, sleep apnea, and chronic kidney disease), Dr. Doran considered him at relatively low risk and, instead of seeking assistance from an anesthesiologist, sedated him herself, administrating 100 micrograms of Fentanyl and 2 milligrams of Versed. Patient A became unresponsive, and a code blue was called. Dr. Doran claims that she called for reversal agents, but that nurses did not respond quickly, and the reversal medications were improperly locked away, against VA hospital policy. Before reversal agents could be administered, the code-blue team arrived and intubated Patient A, who was transferred by ambulance to a hospital where he remained for an extended period before being moved into assisted living. Patient A's family sued the VA for three million dollars and the VA settled the claim for $300,000 in damages. Dr. Doran maintains that she treated Patient A properly and did not violate any medical or VA policies.

The parties stipulated to the following facts concerning Dr. Doran's administrative review. A PSB was appointed to review the patient-safety concerns. The PSB reviewed Dr. Doran's care of Patients A, B, C, and D, as well as the nursing staff's concerns about patient safety. The PSB found "a recurring theme of error in decision making and judgment" by Dr. Doran and recommended that she undergo further evaluation to determine her fitness for duty, as well as receive mentoring, proctoring, and remedial training. Per VA Care Center bylaws, an MEB then convened to review Dr. Doran's care and consider the PSB's recommendations. After reviewing the evidence and testimony from Dr. Doran, the MEB concluded that because alternatives to

revoking Dr. Doran's privileges were not feasible for the VA, because Dr. Doran's failure to understand her role and responsibility in the patient care at issue threatened patient safety, and because the patients reviewed had poor outcomes, permanent revocation of her VA privileges was warranted. Dr. Borchers, in answering the MEB's questions regarding the PSB's recommendations, noted that Dr. Doran's demeanor and conduct had changed over the last year, and he was "concerned" by the change. He suggested that Dr. Doran's "escalating poor decisions over the last year" could have a physical cause, such as a brain tumor.

A third review was conducted by the AIB, which examined Dr. Doran's treatment of Patient A, as well as allegations that Dr. Doran made amendments to the medical records of Patients A, B, C, and D and/or had requested staff members to make amendments. The AIB's review included 16 interviews and 30 exhibits. The AIB recommended that "appropriate corrective action be taken" regarding Patient A's care, Dr. Doran's amendment to Patient A's medical record, and her request that staff amend Patient D's medical record. On August 21, 2015, after personally reviewing the charges against Dr. Doran, the Director of the Columbus VA, Keith Sullivan, terminated Dr. Doran for "unacceptable performance and conduct."

Dr. Doran appealed her termination to the VA Under Secretary of Health and the DAB. 38 U.S.C. §§ 7461(b)(1), 7462. The DAB determined that Dr. Doran's treatment of Patient A "was so removed from the standard of care [that] the penalty of discharge is warranted." The DAB emphasized its concerns that the testimony identified errors of judgment and that Dr. Doran "demonstrated a lack of the insight needed to guarantee confidence that her performance would be improved and be consistently safe in the future." The DAB noted that "[o]ther physicians at the facility have received major adverse actions for similar acts of misconduct." The DAB found termination appropriate especially given the seriousness of Patient A's code blue, the erosion of

trust and confidence between Dr. Borchers and Dr. Doran, and the need for Dr. Doran, as a licensed independent practitioner, to reflect upon her performance and role in the events under investigation. "Her consistent defense was to argue that her actions were correct and to minimize her role in the events." The DAB voted 2-1 to uphold Dr. Doran's termination. The Principal Deputy Under Secretary for Health executed the DAB's decision to terminate Dr. Doran's employment on May 13, 2016, which was the final agency action regarding Dr. Doran's employment at the VA.

In the APA case, Dr. Doran sought judicial review of her termination, seeking to set aside the findings as arbitrary, capricious, and an abuse of discretion. The district court affirmed the DAB decision, holding that the DAB reached "the reasonable conclusion that discharging Dr. Doran was a warranted and prudent course of action." *Doran*, 2018 WL 806253, at *21. Dr. Doran appealed. This court, conducting de novo review, found that "[w]hile a lesser sanction may also have been appropriate, we cannot say that the DAB's decision to sustain Dr. Doran's termination was arbitrary and capricious." *Doran v. Wilkie*, 768 F. App'x at 352. We reasoned that its decision was "not counter to the evidence before the agency, or so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* at 353 (citation omitted). We affirmed the district court's decision upholding the DAB's findings that Dr. Doran's termination was warranted. *Id.* at 357.

Concurrent with all the above, Dr. Doran initiated employment-discrimination claims by filing a formal complaint with the VA's Office of Resolution Management for discrimination on the basis of sex, perceived disability, and reprisal dating from May 2014 to August 21, 2015. Dr. Doran listed 55 examples of alleged discrimination. In August 2016, the VA's Office of Employment Discrimination Complaint Adjudication dismissed Dr. Doran's complaint because

she had filed her APA case in federal court and a regulation required the agency to dismiss a complaint "[t]hat is the basis of a pending civil action in a United States District Court." 29 C.F.R. § 1614.107(a)(3).

Dr. Doran then filed this case in district court, alleging disability discrimination under the Americans with Disabilities Act; sexual harassment, retaliation, and gender-discrimination pursuant to Title VII of the Civil Rights Act of 1964; and fair-pay violations under the Lilly Ledbetter Fair Pay Act of 2009. The parties consented to a magistrate judge conducting all proceedings. Upon motion by both parties, the magistrate judge stayed proceedings pending the outcome of the APA case. The magistrate judge then granted a further stay pending Dr. Doran's appeal of the APA case to this court. After we ruled in favor of the VA in the APA case, *Doran v. Wilkie*, the magistrate judge held a status conference, at which time counsel for Dr. Doran indicated that she would either move to withdraw as counsel or dismiss this action in light of our decision. On May 21, 2019, since the case remained pending and Dr. Doran's counsel had not moved to withdraw, the magistrate judge vacated the stay, and the VA filed a motion for summary judgment. The magistrate judge held a telephonic status conference on November 5, 2019 and issued an order memorializing the parties' agreement to file stipulations related to the VA's summary-judgment motion and the VA's agreement to withdraw its pending motion for summary judgement. The parties entered into a stipulation of facts and a stipulation that Dr. Doran dismiss with prejudice her sexual-harassment and fair-pay claims. The VA then filed a renewed summary-judgment motion on Dr. Doran's remaining claims of gender discrimination, retaliation, and disability discrimination.

On May 29, 2020, the magistrate judge granted the VA's motion for summary judgment, holding that Dr. Doran had abandoned her disability and retaliation claims. Addressing Dr.

Doran's gender-discrimination claim, the magistrate judge held that while Dr. Doran was a member of a protected class, had suffered an adverse employment action, and was qualified for the position, she had not established a prima facie claim for gender discrimination. Further, the magistrate judge held that, even if Dr. Doran had established a prima facie claim of gender discrimination, the VA had presented legitimate non-discriminatory reasons for her termination and that Dr. Doran failed to raise a genuine issue of material fact that those reasons were pretextual. Dr. Doran filed this appeal pro se and is now represented by new counsel on appeal.

II.     Motions to Supplement and Modify the Record

Prior to filing her brief on the merits, Dr. Doran filed a motion to supplement the record on appeal with documents that were not available at the time of summary judgment: the results of the Ohio Medical Board's disciplinary investigation into Dr. Doran. She also filed a motion to modify the record to strike the stipulations on grounds that prior counsel did not obtain her consent to make those stipulations. In the alternative, Dr. Doran moved for a limited remand to allow the district court to consider these motions. A motions panel referred these motions to us, the merits panel.

Since Dr. Doran's termination from the VA involved deviations from standards of care, the VA was required to report her termination and revocation of her clinical privileges to the Ohio Medical Board ("Board"). *See* 38 C.F.R. § 46.4(c). In February 2018, the Board initiated its own investigation to determine whether to take adverse action with respect to Dr. Doran's medical license. Despite knowing that the Board was conducting its own investigation, Dr. Doran never asked the magistrate judge to defer a ruling on the pending summary-judgment motion until after the Board finished its investigation. However, shortly after summary judgment was entered against her, Dr. Doran learned that the Board issued an order finding that no further action be taken

against her, upholding her license to practice medicine. Dr. Doran immediately moved to supplement this record on appeal with the favorable Board investigation and report.

Motions to supplement the record on appeal are permitted by Federal Rule of Appellate Procedure 10(e) for the purpose of the correction or modification of the record. The purpose of the rule is to permit an appeals court "to correct omissions from or misstatements in the record for appeal, not to introduce new evidence." *United States v. Murdock*, 398 F.3d 491, 500 (6th Cir. 2005); *see also Abu-Joudeh v. Schneider*, 954 F.3d 842, 848 (6th Cir. 2020) (collecting cases). Further, in an appeal from a grant of summary judgment, evidence outside the record may not be considered absent "special circumstances." *Murdock*, 398 F.3d at 499. Dr. Doran did not file her motion to supplement to correct omissions or misstatements in the record below. Rather she seeks to add new information that did not exist at the time summary judgment was entered. Dr. Doran concedes that the Federal Rules of Appellate Procedure do not "specifically authorize" an appellate record to be supplemented under these circumstances.

Thus, Dr. Doran recognizes that the only way that an appellate court can change a record on appeal is through our discretionary authority or "inherent equitable power." *Id.* at 500 (citation omitted). Factors we consider in deciding whether to exercise any such equitable power include:

> 1) whether proper resolution of the case was beyond any dispute, 2) whether it would be inefficient to remand to the district court for review of additional facts, 3) whether the opposing party had notice of the existence of the disputed evidence, and 4) whether the case is before the court on a habeas corpus claim, because federal appellate judges have unique powers in that context.

*Ibid*. (quotation marks and citation removed). In short, supplementation under our inherent equitable power is generally inappropriate unless the additional evidence "establishes beyond doubt the proper disposition of [the] case." *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1013 (6th Cir. 2003) (citation omitted).

Dr. Doran, while not explicitly addressing the *Murdock* factors, argues that the magistrate judge should have waited to issue summary judgment pending the final decision of the Board. In particular, she says that the Board is the ultimate arbiter of allegations of medical incompetence and threats to patient safety, and that the Board's ruling would "provide for a historically complete and medically accurate record" on appeal. With no supporting Sixth Circuit case law, Dr. Doran implies that the Board's decision should be considered as part of the administrative record. But the Board's decision was part of a completely different administrative process, in a different forum, using different standards than the VA proceedings.

At the most basic level, the Board's decision regarding Dr. Doran's medical license is not relevant to Dr. Doran's claim of gender discrimination. As held by the magistrate judge and explained below, the issue is not whether Dr. Doran made a medical error, but whether the VA reasonably and honestly believed that she did. Dr. Doran does not argue that the Board's decision shows discriminatory intent, but rather that it supports her unyielding position that she did nothing wrong in her care for Patient A. Dr. Doran is suggesting that the Board's decision to not take disciplinary action shows discriminatory intent and pretext on the part of the VA. Yet, especially after the extensive administrative and judicial review in this case, the Board's decision in no way suggests that the "proper resolution of the case was beyond any dispute." *Murdock*, 398 F.3d at 500 (citation omitted). In such circumstances, we decline to use our discretionary authority or "inherent equitable power" to supplement the record.

Dr. Doran also seeks to strike all stipulations from the record on grounds that she never authorized her former counsel to enter them. Dr. Doran attached a sworn declaration to her motion to strike stating that she never knew about the stipulations, much less approved them. Dr. Doran attests that if she had seen the stipulations, she would never have agreed to them because relevant

- 10 -

details were missing, making them incomplete at best and knowing misrepresentations to the court at worst. Her motion to modify is the first time that Dr. Doran has objected to the stipulations. Both parties agreed to stay this case pending the outcome of Dr. Doran's APA case. After the APA case and its appeal was decided, the parties entered stipulations in our case, which are entirely consistent with the *Doran v. Wilkie* decision. The parties jointly agreed to the stipulations, knowing that the magistrate judge would be using them to make a summary-judgment ruling. Dr. Doran argues that the stipulations 1) were entered into without her consent; 2) are factually implausible and legally erroneous; and 3) fail to include "several important findings and rulings" entered in Dr. Doran's favor. Dr. Doran did not raise this argument below and it is not properly before us. We rarely exercise discretion to hear issues for the first time on appeal, *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 615 (6th Cir. 2014), and we decline to do so here. If Dr. Doran's argument is that her prior counsel committed legal malpractice, the proper remedy for her would be to bring a legal-malpractice claim against her former attorney. *Cf. Cap. Dredge & Dock Corp. v. City of Detroit*, 800 F.2d 525, 530-31 (6th Cir. 1986).

III.     Standard of Review

We review the district court's grant of summary judgment de novo. *Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We draw reasonable inferences in favor of the non-moving party, but once a moving party identifies record materials showing there is no genuine issue of material fact, the non-moving party must identify material in the record that demonstrates the existence of a genuine dispute of material fact. *Carter*, 349 F.3d at 272; Fed. R. Civ. P. 56(c)(1)(A). These materials can

include administrative rulings, such as those issued during the VA's investigations of Dr. Doran. *Abrams v. Johnson*, 534 F.2d 1226, 1228 (6th Cir. 1976).

    IV.    Prima Facie Showing of Gender Discrimination

For all the factual and procedural complexity of this case, here we need only to decide on summary judgment if the VA discriminated against Dr. Doran on the basis of gender and whether Dr. Doran abandoned her retaliation claim. A plaintiff may rely on direct or circumstantial evidence to establish a Title VII violation. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 648-49 (6th Cir. 2012). Where, as here, the plaintiff's claim is based solely on circumstantial evidence, it is analyzed under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework. *See Davis v. Cintas Corp.*, 717 F.3d 476, 491 (6th Cir. 2013). Dr. Doran can set forth a prima facie case of gender discrimination by showing that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was "replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (citation omitted). Only the fourth element is in dispute here. The magistrate judge held that Dr. Doran failed to demonstrate a genuine issue of material fact that she was treated differently than a similarly situated, non-protected employee or that she was replaced by someone outside the protected class.

As to the issue of a similarly situated, non-protected employee, the magistrate judge held that Dr. Doran failed to identify such a person. To be considered similarly situated, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or

the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). On appeal, Dr. Doran argues that Dr. Borchers, who had been involved in a code-blue incident that resulted in patient harm for which he was not disciplined, was similarly situated. The magistrate judge held Dr. Borchers was not similarly situated because he was her supervisor. Whether he was her supervisor or not, Dr. Doran pointed to no evidence in the record or in the briefs that Dr. Borchers was ever involved in a code-blue event in the first instance. In fact, Dr. Borchers testified that he had never been involved in a code-blue event. They are not similarly situated as they did not engage in comparably similar conduct.

Dr. Doran argues that Dr. Borchers, as her "primary accuser," had furnished "many inaccuracies" in his testimony against her in VA administrative hearings and that he had not been punished for those inaccuracies, showing discriminatory treatment by the VA. Unspecified misstatements about Dr. Doran and the code-blue event involving Patient A are not comparable conduct to Dr. Doran providing medical care to a patient that ultimately resulted in a code-blue event.

Dr. Doran also argues that Dr. Scott McKeon, who responded to the code-blue event and intubated Patient A, was similarly situated. But he was called in to treat Patient A after a code blue had been initiated. Finally, Dr. Doran argues that the VA has never terminated any male physician with "an otherwise unblemished record based on a single non-fatal episode of alleged incompetence." Equating unspecified, non-fatal incompetence with a code-blue event is a false equivalency. A non-life-threatening medical event will not lead to discipline at the same level as a code-blue event, regardless of a doctor's gender.

Regardless of whether there was a similarly-situated male employee who received preferential treatment, Dr. Doran argues that she was discriminated against because she was

improperly replaced by someone outside the protected class. Before the magistrate judge, Dr. Doran argued that she was replaced by Dr. William Emlich, Jr., but she only stated that he was hired after her. The VA admits he was hired in 2018, but the magistrate judge held that neither party provided any evidence from which the court could "meaningfully assess whether Dr. Emlich can be considered Dr. Doran's replacement." On appeal, Dr. Doran does not focus on Dr. Emlich. Instead, she argues that "one or two males" were hired at some unidentified time after her termination. She argues that because not one female physician has been hired by the Gastroenterology Department since her departure and the department is all male that "it hardly matters exactly who filled the position." Dr. Doran does not even allege that either of the new male doctors was hired to fill her position. Rather, she just alleges that hiring of any new male doctor shows that the VA was discriminating against her. Such bare allegations are insufficient to establish a prima facie case of gender discrimination.

V.      Pretext

The magistrate judge held that even if Dr. Doran had established a prima facie claim of gender discrimination, the VA "easily [met]" the burden of showing that it had a legitimate business reason to terminate Dr. Doran – patient safety – and that Dr. Doran could not meet her burden to prove that patient safety concern was pretextual. A plaintiff can demonstrate pretext by showing that the defendant's "proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 434 (6th Cir. 2002). The burden as to pretext remains with the employee. *Hall v. Ledex, Inc*., 669 F.2d 397, 399 (6th Cir. 1982).

Dr. Doran argues that she had done nothing wrong during Patient A's code-blue event.[2] She argues that this factual dispute over the quality of medical care she provided Patient A is sufficient to establish that the VA's patient-safety grounds for firing her were purely pretextual. But, whether Dr. Doran made a medical error is not the question. Under the honest-belief rule, where "an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009) (citation and quotation omitted). Given Patient A's outcome, the VA had an honest belief that Dr. Doran's medical care was a threat to patient safety and therefore had a legitimate business reason for her termination.

VI.     Retaliation

Dr. Doran argues that the VA retaliated against her after she complained in 2014 to the Chief of Staff and human resources that she was not getting paid the same student-loan-forgiveness benefits as a male counterpart had. To make a prima facie claim of Title VII retaliation, a plaintiff must show that 1) she engaged in a protected activity; 2) her exercise of that activity was known by the defendant; 3) thereafter, the defendant took materially adverse action against the plaintiff; and 4) a causal connection existed between the protected activity and the materially adverse action. *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 568 (6th Cir. 2019). Retaliation claims must be proved according to traditional principles of but-for causation, requiring proof that the adverse action would not have occurred in the absence of the alleged wrongful action of the employer. *Laster v. City of Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014).

---

[2] Dr. Doran argues that she had submitted evidence from "independent evaluators" which create a factual dispute over the quality of medical care she provided Patient A. However, those independent reviews are not part of the record, because they were filed late and without leave of the magistrate judge.

The magistrate judge held that Dr. Doran abandoned her retaliation claim because she only restated the elements of retaliation and did not make any substantive arguments in opposition to the motion for summary judgment. This is consistent with her complaint, where Dr. Doran claimed retaliation by unspecified "adverse actions" and her ultimate termination. The retaliation claim was not developed below. Now on appeal, she argues that although she had been aware of, and complaining about, not receiving her EDRP benefits since 2010, it was not until 2014 that she realized this was gender discrimination after a male doctor, who had recently transferred to the Columbus VA, showed her that he was receiving EDRP benefits. She argues that there is a causal connection between the protected activity and the adverse employment action because they occurred "in close proximity." But, Dr. Doran provides no specific proximity in time between these events, arguing only that she complained about her EDRP sometime "in 2014" and that "[a]round the same time" Dr. Borchers wrote derogatory comments in her 2014 proficiency report, and that "shortly following these complaints of unfair treatment in 2014" she was suspended on January 26, 2015. While she now addresses retaliation, it is in a cursory way at best. We agree that Dr. Doran's failure to address the substance of her retaliation claim amounted to abandonment of her retaliation claim, so we decline to address it here. *See Thomas M. Cooley L. Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 528 (6th Cir. 2014).

VII.    Conclusion

We **AFFIRM** the district court's grant of summary judgment in favor of the VA.