*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0073p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 03-1811

SETH MURDOCK,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-80882—Gerald E. Rosen, District Judge.

Argued: October 26, 2004

Decided and Filed: February 15, 2005

Before: KEITH, CLAY, and BRIGHT, Circuit Judges.[*]

---

## COUNSEL

**ARGUED:** Carole M. Stanyar, Detroit, Michigan, for Appellant. Lynn A. Helland, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Carole M. Stanyar, Detroit, Michigan, for Appellant. Lynn A. Helland, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

## OPINION

---

CLAY, Circuit Judge. Defendant, Seth Murdock ("Murdock"), appeals his sentence of twenty-seven months imprisonment, imposed by the district court following his conviction by guilty plea of causing another to possess false documents with intent to defraud the United States in violation of 18 U.S.C. §1002. The government moves to dismiss the appeal on the basis of an appellate waiver provision in Defendant's plea agreement, and moves to strike Defendant's brief on the ground that it impermissibly refers to documents not submitted to the district court prior to entry of judgment.

For the reasons set forth below, we 1) **DENY** the government's motion to dismiss the appeal; 2) **DENY** the government's motion to strike Defendant's brief, but refuse to consider documents not

---

[*]The Honorable Myron H. Bright, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

before the district court at the time of judgment; and 3) **AFFIRM** the sentence imposed by the district court.

## BACKGROUND

### *Procedural History*

On October 1, 2002, Murdock was charged in an eleven-count indictment in the United States District Court for the Eastern District of Michigan. Pursuant to an agreement with the government, he pleaded guilty on January 28, 2003, to Count I, causing another to possess false documents with intent to defraud the United States in violation of 18 U.S.C. §1002. The plea agreement signed by the government and Defendant in this case contained the following waiver of appeal provision:

> *Defendant's waiver of appeal rights.* If the court imposes a sentence equal to or less than the maximum sentence described in ¶ 2 of this agreement ["no more than the lower of a) 27 months of imprisonment, or b) the midpoint of the guideline range that the Court determines to be applicable"], defendant waives any right he may have to appeal his conviction or sentence, including any right under 18 U.S.C. § 3742 to appeal on the grounds that the sentence was imposed as a result of an incorrect application of the sentencing guidelines. (Joint Appendix at 3-6).

During the plea colloquy, the district court did not did not discuss with Murdock the waiver provision of his plea agreement. At the request of the court, the prosecutor summarized the terms of the plea agreement, without mentioning the waiver provision. Following that summary, the court noted that it thought "all the material provisions" had been addressed, and defense counsel agreed.[1] The district court asked Murdock if the prosecutor's summary represented his understanding of the agreement, and Murdock responded that it did. The district court never asked Murdock if he had been given an opportunity to read over the plea agreement and to discuss it with his attorney.

The district court determined that under the Federal Sentencing Guidelines, Murdock's Total Offense Level was 14 and his Criminal History Category was IV, resulting in a guideline imprisonment range of twenty-seven to thirty-three months. The district court imposed a sentence of twenty-seven months on June 12, 2003.

Murdock filed a notice of appeal of his sentence to this Court on June 20, 2003. On October 16, 2003, the government filed a motion to dismiss Murdock's appeal, on the ground that Murdock waived his right to appeal in his plea agreement. The same day, the government also filed a motion to strike Murdock's brief, alleging that it impermissibly referenced documents which Murdock added to the record while the case was on appeal. This Court ordered that both motions be referred to the merits panel.

In a letter brief filed July 21, 2004, Murdock moved to supplement his appeal brief in order to raise an additional issue under *Blakely v. Washington*, 542 U.S. ___, 124 S.Ct. 2531 (June 24, 2004). The government filed a letter brief in reply to Defendant's letter brief on August 2, 2004.

---

[1]Later, the district court returned to the subject of the agreement to address the relevance of conduct underlying the dismissed counts to the determination of Defendant's sentence. The appellate waiver provision was not discussed.

*Facts*

A brief discussion of Murdock's offense conduct may be helpful in understanding the third issue in this case: whether the district court erred in calculating the amount of loss in this case, and, therefore, Murdock's offense level, for sentencing purposes.

According to the Pre-sentence Investigation Report ("PSR") prepared by the U.S. Probation Office, Murdock's sister, Gloria Pitts ("Pitts"), failed to file tax returns for the years 1993-1996 and owed the Internal Revenue Service ("IRS") approximately $132,000. The IRS placed a levy on her salary from her employer, Wayne State University ("Wayne State"). Shortly thereafter, in December 1998, Murdock sent a forged release of levy to Wayne State, causing the levy to be lifted. A second levy was placed on Pitts' salary in June 1999. At the plea colloquy, Murdock conceded causing a second false release of levy to be sent to Wayne State in August 1999. It was for his conduct in causing the second release of levy to be sent that Murdock was convicted. That release did not result in the levy being lifted.

Again, according to the PSR, in September 1999 Murdock sent a business check to the Boston office of the IRS in the amount of $132,000. The check was drawn on the closed bank account of a trucking company Murdock purchased in 1997, which went bankrupt in 1998. Murdock thereafter phoned the IRS to inquire whether the levy would be lifted based on receipt of the check; the IRS did lift the levy and Pitts received a payroll check on September 15, 1999, in the amount of $2,984.87.

Murdock maintains that the IRS erred in finding Pitts was in arrears, that she did not owe the IRS $132,000 at the time Murdock committed the offense for which he was convicted, and that there was in fact no tax loss in this case. The evidentiary support Murdock offers for these contentions was not provided to the district court before the entry of judgment and sentence and is contested on that basis by the government. *See* discussion of Issue II, *infra*, at 11. Murdock further contends that he believed that his sister was due a refund at the time he caused the false release of levy to be sent. In any event, Murdock stipulated to the following facts in the plea agreement:

> During 1999 the IRS was in the process of attempting to collect $132,000 in back taxes from Dr. Gloria Pitts. To that end, the IRS placed a levy on the salary of Dr. Pitts in June, 1999. After that date defendant represented Dr. Pitts in her dealings with the IRS. On August 6, 1999, defendant sent a forged release of levy to a payroll specialist at the payroll office of Wayne State University, in Detroit, Michigan for the purpose of allowing Dr. Pitts to obtain the money that had been levied by the IRS. Defendant knew that the release of levy was forged, and sent the release with the intent to defraud the IRS of the amounts it could collect under the levy. (J.A. at 24).

## DISCUSSION

**I.      Whether the waiver of appeal provision of the plea agreement is valid**

**A.      The district court's failure to address the appeal waiver provision of the plea agreement during the plea colloquy**

As noted above, the district court never told Murdock that he was waiving his appellate rights, and never ascertained that Murdock understood the appellate waiver provision of his plea agreement. This failure violated Federal Rule of Criminal Procedure 11(b)(1)(N) (enacted as 11(6)(c), effective December 1, 1999), which requires that before a guilty plea is accepted, the "court must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal . . . ." The Advisory Committee Notes

to Rule 11 observe that this provision was incorporated because, in light of the increasing use of appellate waivers, "the Committee believed it was important to insure that first, a complete record exists regarding any waiver provisions, and second, that the waiver was voluntarily and knowingly made by the defendant." FED. RULE CRIM. P. 11 advisory committee's notes. We must decide whether this failure renders the appellate waiver provision of Murdock's plea agreement invalid.

### B.        Relevant legal standard

"This Court reviews the question of whether a defendant waived his right to appeal his sentence in a valid plea agreement *de novo*." *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003) (citing *United States v. Stubbs*, 279 F.3d 402, 411 (6th Cir. 2002)).

At oral argument, the government urged us to hold that the Supreme Court's recent decision in *United States v. Dominguez Benitez*, 542 U.S. ___, 124 S.Ct. 2333 (June 14, 2004) requires Murdock to show a reasonable probability that, but for the Rule 11 violation by the district court, he would not have entered a plea of guilty. The Court in *Dominguez Benitez* held "that a defendant *who seeks reversal of his conviction* after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." 124 S.Ct. at 2340 (emphasis added). We decline to adopt the government's view of this issue, and instead conclude that *Dominguez Benitez* is inapplicable here because Murdock is not seeking to reverse his conviction, but merely to void the appellate waiver provision in order to challenge his sentence. *See United States v. Arellano-Gallegos*, 387 F.3d 794, 797 (9th Cir. 2004) ("Indeed, Arellano does not appeal his conviction. *Cf. United States v. Benitez*, ___U.S.___, 124 S.Ct 2333, 159 L.E.2d 157 (2004). He only appeals from his *sentence*.")

We therefore will not require that Murdock show that, but for the district court's failure to discuss the appellate waiver provision of the plea agreement, he would not have pleaded guilty. Instead, we adhere to the rule set forth in *United States v. Vonn*, 535 U.S. 55, 59 (2002), which instructs us to review violations of Rule 11 for plain error if the defendant did not object before the district court. A defendant bears the burden of proof on plain error review, *id.* at 62, and must show that there is "1) error, 2) that is plain, and 3) that affects substantial rights. If all three conditions are met, an appellate court may exercise its discretion to notice a forfeited error, but only if 4) the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (citations and internal quotation marks omitted).

### C.        Whether the district court's failure to discuss the appellate waiver provision with Murdock constituted plain error

This circuit has not yet subjected a case involving a violation of Rule 11(b)(1)(N) to plain error review.[2] We will take up the first two prongs of the plain error test together, as they are easily met in this case, and then address the final two prongs separately.

---

[2]In two unpublished cases following the adoption of Rule 11(b)(1)(N), this Court treated the amended rule as requiring the invalidation of waiver appeal provisions where the district court failed to discuss them in plea colloquies, and refused to dismiss appeals based on appellate waivers in those cases. *U.S. v. Parks*, No. 98-5203, 1999 WL 1045558 (6th Cir. Nov. 11, 1999); *U.S. v. Gresham*, No. 00-1397, 2001 WL 700859 (6th Cir. June 11, 2001).
However, subsequent to those decisions, the Supreme Court issued its opinion in *Vonn*. *Vonn* establishes that it is not enough that a defendant who did not object before the district court merely demonstrate a violation of Rule 11; he "has the burden to satisfy the plain-error rule." *Vonn*, 535 U.S. at 59.

### i.      The district court's failure to discuss the appellate waiver provision was error, and it was plain

Again, the first two prongs of plain error analysis require that Murdock show that the district court erred, and that the error was plain.  Those requirements are very easily met where, as here, a district court fails to comply with the clear mandate of a Federal Rule of Criminal Procedure.  *See United States v. Olano*, 507 U.S.725, 732-34 ("a deviation from a legal rule" is error, and  "plain" is synonymous with "clear" or "obvious").  Rule 11(b)(1)(N) required the district court to inform Murdock of the appellate waiver provision and to insure that he understood it.  Failure to do so constituted error that was plain.

### ii.      Murdock's substantial rights were affected by the district court's failure to comply with Rule 11(b)(1)(N)

The third prong of the plain error test requires that Murdock show that his substantial rights were affected by the error.  A brief reiteration of the facts of the Rule 11(b)(1)(N) violation is warranted here.  Again, the district court did not comply with the Rule's mandate that the court inform a defendant of the existence of the appellate waiver provision and insure that he understand it.  Likewise, the district court did not determine that Murdock had discussed the appellate waiver provision with his attorney.  Indeed, the district court did not determine that Murdock had discussed *any* provision of the plea agreement with his attorney.  Furthermore, the prosecutor, when asked to summarize the important provisions of the plea agreement, did not include in his discussion the fact that Murdock was waiving his right to appeal.  In short, no mention of the waiver of appeal was made in open court until the time of sentencing, after the guilty plea was entered.

We agree with the conclusion reached by the Ninth Circuit, in a case involving similar factual circumstances, that a defendant's substantial rights are affected by the "wholesale omission" of the Rule 11-required inquiry, coupled with the absence of any indication on the record that the defendant understood that he had a right to appeal and that he was giving up that right.  *Arellano-Gallegos*, 387 F.3d at 797.

We hold that a defendant can prove that his substantial rights are affected when he shows that the district court failed to comply with the key safeguard in place to protect those rights and that there was no functional substitute for that safeguard.[3]  We emphasize that in the absence of an inquiry into the appellate waiver by the district court as required under the rule, some other event could suffice to insure that Defendant's waiver was knowing and voluntary.  Otherwise, of course, a defendant could always prevail simply by alleging and proving the Rule 11 violation.

It might, for example, be sufficient for a defendant to assure the district court that he has reviewed the waiver provision (or, at a bare minimum, the plea agreement) with his attorney and that his attorney has explained it.  Alternatively, the prosecutor in summarizing the key elements of the agreement might adequately address the waiver.  However, neither of those circumstances exist in

---

[3]In *United States v. Edgar*, 348 F.3d 867 (10th Cir. 2003), a similar case, the Tenth Circuit reached the opposite result. In *Edgar*, the district court had also failed to discuss the defendant's waiver of appellate rights with him during the plea colloquy, although in contrast to the facts of this case, the district court did ascertain that the defendant had discussed the plea agreement with his attorney. The Tenth Circuit found that the error did not affect the defendant's substantial rights, concluding that defendant's argument that nothing in the record showed he understood the waiver was unavailing, because "a mere silent record" would not satisfy the burden that defendant carried. *Edgar*, 348 F.3d at 872-73. We cannot agree with the Tenth Circuit's notion of a "silent record." Instead, we conclude that the silent record in this case, particularly the lack of evidence indicating that Murdock's attorney discussed the plea agreement with him and the prosecutor's failure to mention the waiver when summarizing the key elements of the plea agreement, demonstrates that Murdock's substantial right to a knowing and voluntary waiver of his appellate rights was in fact "affected."

this case. The government instead relies on Murdock's signed assertion that he understood the plea agreement. That is insufficient. In the absence of a discussion of the appellate waiver provision in open court, we will not rely on a defendant's self-assessment of his understanding of a plea agreement in determining the knowingness of that plea, even where, as the government emphasizes is the case here, the defendant is sophisticated or has significant experience with the criminal justice system.

> ### iii.    Upholding the validity of the appellate waiver provision in this case would seriously affect the fairness, integrity, or public reputation of judicial proceedings

The right to appeal, while not of constitutional dimension, *Abney v. United States*, 431 U.S. 651, 656 (1977), is nonetheless of critical importance to a criminal defendant. "A system of appeal as of right is established precisely to assure that only those who are validly convicted have their freedom drastically curtailed." *Evitts v. Lucey*, 469 U.S. 387, 399-400 (1985).

We agree with the Ninth Circuit's approach and conclude that, given the "'wholesale failure'" to ascertain that Murdock understood the waiver provision, "the enforcement of the waiver in these circumstances would seriously affect the fairness, integrity and public reputation of our plea proceedings." *Arellano-Gallegos*, 387 F.3d at 797. Again, the record shows that the judge failed in his duty to discuss the meaning of the appellate waiver provision with Murdock, that the waiver provision was never mentioned in open court, and there is no evidence that Murdock discussed any provisions of the plea agreement with his attorney.

Our concerns about the fairness, integrity, and public reputation of these proceedings are heightened in this case by the role the government played in failing to insure that Murdock understood the appellate waiver provision. The district court entrusted the responsibility of summarizing and explaining the plea agreement to the government, and the government entirely failed to mention the appellate waiver provision. Nothing in the record suggests that this omission was anything but inadvertent. Nonetheless, we conclude that it would negatively "affect the public reputation of judicial proceedings" if this Court appeared to reward a prosecutor for omitting a discussion of the waiver of a key right contained in a plea agreement when asked by the district court to review the material provisions of that agreement. We remind prosecutors as well as judges to be mindful of the importance of ascertaining that defendants are aware of and understand appellate waiver provisions, as reflected in the requirements of Rule 11(b)(1)(N).

In summary, we find that it was plain error for the district court to fail to inquire into Murdock's understanding of the appellate waiver provision of his plea agreement, as required by Rule 11(b)(1)(N), and we deny the government's motion to dismiss this appeal.

## II.    Whether this Court should consider documents filed in the district court after entry of the judgment and sentence from which this appeal is taken

The government has filed a motion to strike Murdock's brief, alleging that it impermissibly referenced documents attached as exhibits to Murdock's motion in the district court seeking bond pending appeal, after judgment and sentence were entered. Murdock claims the documents demonstrate that Pitts' tax liability was incorrectly determined by the IRS.[4] This Court ordered that the government's motion be referred to this merits panel, and, in a second order denying government's motion for rehearing on the issue, ruled as follows:

---

[4]The contested documents are: Affidavit of Gloria Pitts; Comerica Bank Levy, 11/96; Gloria Pitts' Michigan Health Care Corporation Pay Stubb, 9/95; Gloria Pitts' Michigan Health Care Corporation Notice of Levy, 9/95; and an IRS Letter to Gloria Pitts, 5/13/2002.

The defendant's proof brief references documents which were filed in the district court after entry of the judgment and sentence from which the appeal is taken. Therefore, they are not a part of the record for purposes of Fed. R. App. P. 10(e). There is, however, case law which holds that a court of appeals has discretionary authority to supplement the record with material not reviewed by the district court in special circumstances. *See In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts,* 913 F.2d 89, 97 (3rd Cir. 1990); *Dickerson v. State of Alabama*, 667 F.2d 1364, 1367 (11th Cir.), *cert denied*, 459 U.S. 878 (1982). . . . If the merits panel grants the government's motion to dismiss, the challenged documents will have no relevancy. If the motion is denied, the merits panel can decide whether there are special circumstances which would warrant supplementing the record with material that was not reviewed by the district court prior to sentencing.

*United States v. Murdock*, No. 03-1811 (6th Cir. April 8, 2004) (order denying motion for rehearing on government's motion to dismiss the appeal).

Inasmuch as we are denying the motion to dismiss, we must now consider whether special circumstances exist that justify reviewing the material which was not before the district court.[5]

In one of the cases cited by this Court in support of the proposition that a court of appeals has the discretion to supplement the record with material not reviewed by the district court, the Third Circuit identifies two potential sources of that discretionary authority: Federal Rule of Appellate Procedure 10(e) and "any inherent equitable power." *Capital Cities*, 913 F. 2d at 96.

In relevant part, Rule 10(e) provides for "Correction or Modification of the Record" as follows:

(2) If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded:
. . .
(C) by the court of appeals.

We have explained that the purpose of Rule 10(e)(2) is to permit the court "to correct omissions from or misstatements in the record for appeal, not to introduce new evidence in the court of appeals." *United States v. Smith*, 344 F.3d 479, 486 (6th Cir. 2003)(quoting *S & E Shipping Corp. v. Chesapeake & O. Ry. Co.,* 678 F.2d 636, 641 (6th Cir. 1982). This forecloses supplementing the record in this case with any additional documents under Rule 10(e)(2).

Murdock must therefore resort to an argument based on equitable principles, which is difficult for him to do inasmuch as he offers no reasonable explanation for why the documents were not included in the record before the district court. He instead blames the omission on the district court's "err[or] in framing the issue so as to preclude the parties' litigation on the record at sentencing as to the actual loss" and "fail[ure] to make a 'reliable estimate' of the actual tax loss." Def. Reply Brief at 3. Murdock's argument that he was not able to make a sentencing argument about actual tax loss is particularly hard to understand in light of his sentencing memorandum, which *did* make an argument regarding actual tax loss, and his own concession that his sentencing

---

[5]Murdock appears to argue that the documents in question are, in fact, "in the record" of this case, because they were filed with the district court (albeit after entry of judgment). (Def. Reply Brief at 5). The Order of this Court cited above clearly states that this material is not part of the record for purposes of Federal Rule of Appellate Procedure 10(e), which provides for "correction or modification of the record." FED. R. APP. P. 10(e).

memorandum incorporated "in summary form" the information included in the disputed documents. *Id.* at 5. It appears that Murdock's real quarrel is that "the district court's analysis of the issue . . . rendered the actual documents irrelevant." *Id.* While this is true, it does not excuse Murdock's failure to put the actual documents before the district court and on the record, prior to judgment and sentence.

The second case cited in this Court's Order as supporting the Court's discretionary power to allow for the record to be supplemented after judgment is entered, *Dickerson v. State of Alabama*, 667 F.2d 1364, 1367 (11th Cir.), *cert denied*, 459 U.S. 878 (1982), lists several factors to be considered in deciding whether to exercise that discretion. They are: 1) whether proper resolution of the case was beyond any dispute, 2) whether it would be inefficient to remand to the district court for review of additional facts, 3) whether the opposing party had notice of the existence of the disputed evidence, and 4) whether the case is before the court on a habeas corpus claim, because federal appellate judges have "unique powers" in that context. *Dickerson*, 667 F.2d at 1367-68.

We agree with the government that none of those factors weigh in favor of Murdock. We further opine that clear precedent prohibits this Court from permitting the record to be supplemented with the disputed documents under Rule 10(e) of the Federal Rules of Appellate Procedure under the circumstances here, and that Murdock simply cannot make out an argument that the equities demand they be added to the record. Therefore, we deny the government's motion to strike Defendant's brief, but also decline to review the documents in question or to consider any facts drawn from them and not supported by other evidence properly in the record.

### III. Whether the district court erred in determining the amount of loss for purposes of calculating Murdock's offense level

We turn now to the substance of Murdock's claims on appeal. Murdock makes several arguments in support of his claim that the district court erred in calculating the amount of loss in this case. In a supplemental letter brief, Murdock also contends that his sentence must be vacated in light of the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. ___, 124 S.Ct. 2531 (June 24, 2004), because the issue of amount of loss was not submitted to a jury for determination beyond a reasonable doubt. For the reasons that follow, we conclude that there was no Sixth Amendment violation in this case under the Supreme Court's recent decisions in *Blakely* and, now, *United States v. Booker*, 543 U.S. —, 125 S.Ct. 738 (Jan. 12, 2005), because the district court's determination of the amount of loss was supported by facts admitted by the defendant, and that the district court did not err in calculating the amount of loss.

#### A. The district court's calculation of the amount of loss

The district court found that the amount of loss in this case was $132,000. It appears from the transcript of the sentencing hearing that this determination was based primarily on evidence that Murdock wrote a check for that amount to the IRS on a closed account, although the court also noted that it was "a loss that Mr. Murdock was helping to effectuate and intended to effectuate in filing the release of levy." (J.A. at 175). In denying a motion by Defendant for release on bond pending appeal, the district court explained that the amount of loss figure was based on Murdock's admissions in his plea agreement that the IRS levy was $132,000 and that he caused the forged release to be sent with the intent to defraud the IRS of the money it could collect; his further admissions to that effect at the plea hearing; and his sending of the fraudulent check in the amount of $132,000.

#### B. Whether the district court's decision violated Murdock's rights under *Blakely* and *Booker*

Murdock argues that his sentence should be reversed and remanded under *Blakely*, because the issue of the amount of loss was not submitted to a jury for determination beyond a reasonable doubt. The rule announced in *Blakely* was extended by the Supreme Court in its recent opinion in *Booker*, in which the Court concluded that the Sixth Amendment prevents federal judges from making factual determinations that increase a defendant's sentence beyond that which is authorized on the basis of facts "established by a plea of guilty or a jury verdict." *Booker*, 125 S.Ct. at 756. In order to remedy this constitutional violation, the Court severed 18 U.S.C. §3553(b)(1), the provision which made the Guidelines mandatory. *Id.* at 765.

We agree with the district court's determination in denying Murdock's motion for release pending appeal that Murdock's sentence does not pose a problem under *Blakely* or *Booker*, because the sentence imposed was authorized "*solely on the basis of facts . . .admitted by the defendant.*" *Blakely*, 124 S.Ct. at 2537*; see also Booker*, 125 S.Ct. at 756. Murdock's plea agreement included an admission that the IRS levy on his sister's wages was $132,000, and that he caused the forged release to be sent with the intent to defraud the IRS of the amount it could collect under the levy. At his plea colloquy, Murdock admitted that he convinced an IRS clerk to send the forged release of levy to his sister's employer in order to allow Dr. Pitts to collect money that had been levied by the IRS. As will be discussed below, these facts are sufficient to authorize the district court's determination that the amount of loss was $132,000. Because facts sufficient to support the sentence were admitted by the defendant, his Sixth Amendment rights were not violated in this case.

We note that "[t]here may be some federal criminal defendants whose cases were on direct review at the time the Supreme Court issued *Booker* who are entitled to remand even though their sentences are consistent with the Sixth Amendment." *United States v. Milan*, ___F.3d.___, No. 02-6245/6302 (6th Cir. Feb. 10, 2005), slip op. at 8. This opinion should not be read to foreclose a defendant's argument, in the appropriate case, that this Court should vacate and remand his sentence on the ground that the district court regarded the Sentencing Guidelines as mandatory at the time of his sentencing. However, Murdock has made no such argument in this case, and we decline to do so on his behalf.

### C.        Whether the district court erred in calculating the amount of loss

We turn now to consider whether the district court correctly calculated the amount of loss. Our just-stated conclusion that the facts admitted by Murdock support the sentence imposed by the district court essentially mandates our determination that the district court did not err in calculating the amount of loss; however, in the interest of completeness, we will take up Murdock's arguments to the contrary.

As noted above, the district court determined the amount of loss in this case on the basis of facts admitted by Murdock, with reference to the applicable Sentencing Guidelines. We therefore conclude that the district court's calculation of the amount of loss does not represent a factual finding, but rather a legal determination, and we review it *de novo*. *See Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)(citing *United States v. Rutana,* 18 F.3d 363, 365 (6th Cir.1994)).

Murdock makes several arguments in support of his claim that the district court incorrectly calculated the amount of loss in this case for purposes of determining his total offense level. The first of these is that the district court erroneously applied USSG §2B1.1, rather than §§2T1.4 and 2T4.1. We note that Murdock never adequately explains how this alleged error prejudiced him, and the government makes a persuasive argument that his offense level would have been the same under either provision. Those considerations are beside the point, however, because the Statutory Index to the Sentencing Guidelines unequivocally specifies that §2B1.1 is the appropriate guideline provision for the offense for which Defendant was convicted, possession of false papers to defraud

the United States, 18 U.S.C. § 1002.  U.S. SENTENCING GUIDELINES MANUAL app. A (2002).  The district court did not err in applying §2B1.1 in this case.

Murdock next argues that the applicable amount of the loss in this case is zero because his sister was never actually in arrears on her taxes.  The problem with this argument is that it rests entirely on evidence that was not before the district court at the time of judgment and sentencing. For the reasons explained in Part II of this opinion, we cannot consider this evidence.

Finally, Murdock contends that the district court failed in its duty under the Sentencing Guidelines to make a "reasonable estimate" of the amount of loss.  The Application Notes to §2B1.1 instruct that loss is the greater of "actual loss" or "intended loss."  Actual loss is "the reasonably foreseeable pecuniary harm that resulted from the offense," whereas intended loss is "the pecuniary harm that was intended to result from the offense" and "includes intended pecuniary harm that would have been impossible or unlikely to occur."  U.S. SENTENCING GUIDELINES MANUAL §2B1.1, cmt., n. 2.

Again, the district court found that the amount of loss in this case was $132,000, based on Murdock's admissions in his plea agreement that the IRS levy was $132,000 and that he caused the forged release to be sent with the intent to defraud the IRS of the money it could collect; his further admissions to that effect at the plea hearing; and his sending of the fraudulent check in the amount of $132,000.

Murdock objects to the use of evidence related to the fraudulent check, on the grounds that it improperly "merged" the dismissed Count Eleven (which charged Murdock with falsely stating to an IRS employee that the $132,000 tax liability had been paid in full) into Count One.  Although Murdock does not specifically make this argument, we note that because Murdock did not admit that he sent the fraudulent check, use of that fact in determining the amount of loss would violate *Booker*. However, as noted above, that fact was not necessary to for the district court to determine that the amount of loss was $132,000, which vitiates both Murdock's argument of error and any *Booker* argument with respect to this issue.  We conclude that the district court's determination of the amount of loss figure was proper and supportable based solely on the evidence admitted by the defendant.

## CONCLUSION

For the foregoing reasons, we **DENY** the government's motion to dismiss this appeal, **DENY** the government's motion to strike Defendant's brief but decline to consider documents filed by Defendant after entry of judgment, and **AFFIRM** the sentence imposed by the district court.