**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0735n.06
Filed: October 15, 2007

No. 06-5214

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| WILLIAM STAMPS, JR., | ) | |
| | ) | |
| **Defendants-Appellants.** | ) | |
| | ) | |

## OPINION

**Before: BATCHELDER, DAUGHTREY, Circuit Judges; ACKERMAN, District Judge.**[*]

**HAROLD A. ACKERMAN, District Judge.** This appeal derives from a plea agreement and subsequent sentencing of Defendant William Stamps, Jr. Stamps pled guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a) and was sentenced to 170 months of incarceration. For the following reasons, the District Court properly established a sufficient factual basis for Stamps's guilty plea, adequately explained its sentencing rationale, and imposed a sentence that was reasonable. Therefore, we will **AFFIRM** the District Court's sentence.

---

[*] The Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

1

## I.

On September 30, 2005, Defendant William Stamps, Jr., robbed an Am South Bank in Memphis, Tennessee, after he approached a bank teller and handed over a note that stated "Give me stack of hundreds no dye." After the teller handed over $1,050 in cash, Stamps demanded more money and patted or pulled at his waistband. The teller responded that she did not have any more money, and Stamps fled from the bank with the cash originally passed to him. Stamps did not have a gun during the commission of the robbery.

On October 5, 2005, the police received a tip that Stamps was the perpetrator, and picked him up for questioning. After he was advised of his rights, Stamps gave a statement admitting to the bank robbery. Stamps was later identified in a photo line-up by the teller and two other bank employees.

On November 1, 2005, Stamps appeared before District Judge Jon P. McCalla and pled guilty to a one-count Information pursuant to a written plea agreement. The Information stated that "On or about September 30, 2005 . . . William Stamps, by force, violence and intimidation did take from the person and presence of another money belonging to and in the care, custody, control, management and possession of Am South Bank . . . a bank whose deposits were then insured by the [FDIC]; in violation of [18 U.S.C. § 2113(a)]."[1] (J.A. at 6.)

---

[1] Section 2113(a) provides:

> Whoever, *by force and violence, or by intimidation*, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank . . . [s]hall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a) (emphasis added).

The Probation Office prepared a pre-sentence report ("PSR") using the 2004 edition of the Sentencing Guidelines. The PSR indicates that when Stamps robbed the Am South Bank, he was on supervised release stemming from a 1999 conviction for the robbery of three Mississippi banks for which he received 92 months imprisonment on all counts. Prior to that, Stamps was convicted in 1995 of first degree burglary of an inhabited dwelling and was sentenced to four years of custody. The PSR listed at length Stamps's approximately 26 other arrests between 1991 and October 2001, resulting in 17 criminal history points, which qualified him for Criminal History Category VI. Probation indicated that Stamps qualified for an offense level enhancement under U.S.S.G. § 4B1.1 as a "career offender." After the offense level was adjusted downward for his acceptance of responsibility, the PSR calculated Stamps's resulting total offense level to be 29, corresponding with a Guidelines imprisonment range of 151 to 188 months.

At the February 1, 2006, sentencing hearing, Stamps did not object to the PSR's factual accuracy or the Guidelines sentencing calculation, but rather proffered what he characterized as a "policy argument." (J.A. at 54-55.) Stamps's attorney reiterated at the sentencing hearing that Stamps was "not arguing that he is not a career offender under the Guidelines, but . . . that he is not a typical offender that the Sentencing Commission contemplated obliging that particular status." (J.A. at 58.) According to Stamps, this is because he is not "someone who has engaged in violent behavior or behavior where there is threatened harm to other individuals." (*Id.*) Stamps personally addressed the Court and stated that he was not a violent person; he asserted that this is evidenced by the fact that when given "the opportunity to be violent" during commission of his crimes, "I simply run away." (J.A. at 63-64.) Thus, Stamps requested that the District Court not sentence him as if he were a career offender, and rather sentence him within

3

the Guidelines range without the career offender adjustment, 63 to 78 months.

The District Court rejected Stamps's argument and sentenced him to 170 months imprisonment, three years supervised release, and $1,050 in restitution.[2]  Stamps filed a timely appeal.[3]

**II.**

**A.     The District Court adequately informed the Defendant of the charge and the Defendant understood the nature of the charge against him.**

Stamps asserts for the first time on appeal that he did not enter his guilty plea knowingly and intelligently, because the District Court failed to comply adequately with Federal Rules of Criminal Procedure 11(b)(1) and (2).  Stamps argues that he did not understand the charge of bank robbery, and, more specifically, the essential element of "force, violence, or intimidation." Stamps also argues that the District Court failed to establish a factual basis for his guilty plea in compliance with Rule 11(b)(3).

To be valid, a plea agreement must be entered into knowingly, voluntarily, and intelligently.  *Brady v. United States*, 397 U.S. 742, 748 (1970).  "Rule 11 requires that a district court verify that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Webb*, 403 F.3d 373, 378-79 (6th Cir. 2005); Fed. R. Crim. P. 11(b)(1)-(3).  "[A]

---

[2] Because Stamps has a long history of substance abuse, the District Court also recommended that he be allowed to participate in a 500-hour drug treatment program.

[3] This Court has appellate jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

plea does not qualify as intelligent unless a criminal defendant first receives real notice of the true nature of the charge against him." *Webb*, 403 F.3d at 379 (citing *Bousley v. United States*, 523 U.S. 614, 618 (1998)). Because Stamps did not object contemporaneously to the District Court's alleged errors, this Court reviews his claim for plain error. *United States v. Vonn*, 535 U.S. 55, 59 (2002).[4]

At the outset of the plea hearing, the District Court questioned Stamps about his education and health, learning that Stamps completed a year and a half of college and that he was not taking medication or under the care of a physician. Stamps indicated that he was represented by counsel, that he had previously been given a copy of the one-count Information, and that he had reviewed it with his attorney and understood it. Thus, the District Court determined that Stamps was "fully competent and capable of entering an informed plea." (J.A. at 45.)

A review of the plea hearing indicates that Stamps was adequately informed of the charge against him, and that he understood the nature of the charge. At the plea hearing, Judge McCalla repeatedly read the elements of the bank robbery charge and the individual paragraphs of the plea agreement. Stamps stated that he knew the charge to which he was pleading guilty, and that he was aware of the corresponding maximum twenty-year penalty and $250,000 fine. The District Court reiterated each element of the charge and asked Stamps if he understood what the

_____

[4] The plain error rule requires Stamps to show that there is "1) error, 2) that is plain, and 3) that affects substantial rights. If all three conditions are met, an appellate court may exercise its discretion to notice a forfeited error, but only if 4) the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005) (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)) (internal quotation marks omitted).

Government would have to prove as to each element.[5]  Each time, Stamps responded in the

affirmative.  Judge McCalla repeated the Indictment, noting specifically that one of the elements

of the charge was that he took money from the bank "by force, violence and intimidation."  (*Id.* at

41.)  When asked whether he was aware that if he did not plead guilty, the Government would

have to prove all of the elements of the crime for which he was charged, Stamps responded in the

affirmative.

The District Court questioned Stamps about the factual basis for the charge.  Stamps

responded that he "gave a note to one of the tellers asking for money, . . . they gave me what they

had, like it was a thousand dollars, I think, and she said that's all she had, so I left."  (J.A. at 42.)

While Stamps was describing the events of the robbery, Judge McCalla engaged the Defendant in

the following colloquy:

| | |
|---|---|
| Court: | Did you indicate in some way that you could force [the teller] to give you money? |
| Stamps: | No sir. |
| Court: | But you did give her a note and she didn't know whether you had the ability to – whether you had a gun or not? |
| Stamps: | Well, I didn't have a gun. |
| Court: | I understand. |

(*Id.* at 42-43.)  Thus, Stamps did not admit that he used violence or force to carry out the bank

robbery.  This, however, did not preclude the District Court from finding that Stamps took the

---

[5] For example, the District Court noted: "The government would have to prove each and every part, that would include that the bank was insured by the [FDIC,] . . . that you took the money by force, violence, and intimidation and not by some other method[,] . . . that the money [you took] was actually in the care, custody, control, management, possession of Am South Bank.  All those things individually have to be shown, that is elements have to be shown for you to be found guilty.  So you understand what the government has to prove against you?"  (J.A. at 41-42.)  Stamps replied in the affirmative.

6

money from the teller by intimidation.

The Government then described what it was prepared to prove, including the fact that after the teller handed Stamps the money, he "demanded more money and patted or pulled at his waistband." (J.A. at 43.) After this recitation, the District Court asked if Stamps had any objections or corrections, to which Stamps responded "I mean yes, Your Honor. . . . I am just saying that I didn't have a gun or anything." (*Id.* at 44.) The District Court responded to this statement by noting that the Government did not indicate that he had a gun, but that the Government intended to demonstrate the element of intimidation by the suggestion that he had the ability to enforce his threat. *See infra* p. 10. Stamps acknowledged this explanation, raised no further objections, and immediately thereafter stated that he wished to plead guilty.

On appeal, Stamps asserts that he "repeatedly voiced his objection to an essential element of the crime." (Stamps Br. at 4.) The record suggests otherwise. At the plea hearing, the District Court carefully explained to Stamps the nature of the bank robbery charge pursuant to 18 U.S.C. § 2113(a), and its individual elements. Through its questioning, the District Court determined that Stamps had the capacity to understand, and in fact *did* understand, the nature and elements of the charge. Judge McCalla appropriately responded to Stamps's repeated statements that he did not have a gun during the robbery by explaining the relationship between the acts to which Stamps admitted, and the elements of the charge. Specifically, the District Court stated that the Government need only show that Stamps took the bank's money by intimidation or by the suggestion that he had the ability to enforce the threat. Although, in responding to the District Court's question, Stamps asserted that he did not indicate that he could force the teller to give him the money, Stamps did not object to, or indicate that he did not understand, the most

7

significant element of the charge: that he took the money by intimidation.[6]  Importantly, Stamps

did not object to the Government's factual finding that he had pulled on his waistband while

demanding more money from the teller.[7]  Contrary to his argument on appeal, Stamps's mere

assertions at the plea hearing that he did not have a gun during the bank robbery do not indicate

that he failed to understand the nature of the charge or its elements.  Accordingly, we find that

the District Court properly accepted Stamps's guilty plea because the record reflects that Stamps

received real notice of the true nature of the charge against him, *Webb*, 403 F.3d at 379, and that

Stamps had a sufficient understanding of the bank robbery charge and the element of

intimidation.  Thus, Stamps entered into the plea agreement knowingly, voluntarily, and

intelligently.

We also find that the District Court properly established a factual basis for a plea of guilty

under 18 U.S.C. § 2113(a), and that Stamps used intimidation to carry out the robbery.  *See*

*McCarthy v. United States*, 394 U.S. 459, 467 (1969) (holding that a "judge must determine that

the conduct which the defendant admits constitutes the offense charged in the indictment or

---

[6] In fact, Stamps asserts that he stated at the plea hearing that he "took the money but . . . didn't take it by force, violence or *intimidation*."  (Stamps Br. at 21 (emphasis added).)  However, Stamps also concedes that this statement cannot be located anywhere in the record.  (*Id.*)  Because Stamps has not properly moved for a correction or modification of the record in conformance with Federal Rule of Appellate Procedure 10(e), this Court need not address nor countenance this self-serving assertion.

[7] In his sentencing memorandum, Stamps responded to the Government's allegation that during the robbery he had demanded more money and pulled at his waistband.  Stamps suggested that "[i]t is undisputed that the way one pulls up his pants is to pulled [sic] them up at the waistband."  (J.A. at 23.)  Importantly, however, Stamps does not affirmatively state that this was the reason why he pulled at his waistband.  Only on appeal does Stamps assert that he was merely "pulling up his pants," and that "this action was not in any way intended to imply possession of a weapon or intimidat[ion]."  (J.A. at 8.)  Defendant's counsel repeated this purported explanation at oral argument.

information or an offense included therein to which the defendant has pleaded guilty.  Requiring this examination of the relation between the law and the acts the defendant admits having committed is designed to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.") (citations and internal quotation marks omitted).  This Court "typically review[s] a defendant's challenge to the factual basis for his guilty plea under an abuse of discretion standard.  However, a defendant who fails to object on Rule 11 grounds before the district court must demonstrate plain error."  *United States v. Byrd*, 220 F. App'x  421, 424 (6th Cir. 2007) (citing *United States v. Bennett*, 291 F.3d 888, 894 (6th Cir. 2002); *United States v. Vonn*, 535 U.S. 55, 59 (2002)).

The test for intimidation is essentially an objective one: "whether an ordinary person in the teller's position could reasonably infer a threat of bodily harm from the defendant's acts."  *United States v. Gilmore*, 282 F.3d 398, 402 (6th Cir. 2002).  "In the context of section 2113(a), intimidation is defined as 'an act by a defendant reasonably calculated to put another in fear, or conduct and words calculated to create the impression that any resistance or defiance by the individual would be met by force.'"  *United States v. Thomas*, No. 05-6246, 2007 WL 1310162, at *8 (6th Cir. May 4, 2007) (not precedential) (citing *United States v. Waldon*, 206 F.3d 597, 606 (6th Cir. 2000)).  For example, in *Gilmore*, this Court held that a defendant's unequivocal written and oral demands for money to bank tellers were sufficient to prove intimidation under 18 U.S.C. § 2113(a).  282 F.3d at 403-04; *see also id.* at 402-03 ("[T]he display of a weapon, a threat to use a weapon, or even a verbal or nonverbal hint of a weapon is not a necessary ingredient of intimidation under § 2113(a). . . .  Intimidation does not require proof of express

threats of bodily harm, threatening body motions, or the physical possibility of a concealed weapon."). Notably, the court in *Gilmore* recognized that "[d]emands for money amount to intimidation because they carry with them an implicit threat: if the money is not produced, harm to the teller or other bank employee may result. Bank tellers who receive demand notes are not in a position to evaluate fully the actual risk they face." *Id.* at 402.

Here, Stamps described in his own words the demand note that he passed to the teller. He failed to object to the Government's assertion that after receiving the $1,050, he demanded more money from the teller while patting or pulling at his waistband. The District Court noted that although Stamps may not think that he actually used force, violence or intimidation during the commission of his crime, "[w]here one person is confronted with another person demanding money, there is [an] implicit, if not explicit, threat. . . . In this case, it would probably be both."[8] (J.A. at 70.) Judge McCalla stated that "[c]learly, the person who gave the money up perceived that they were [sic] being robbed and perceived that there was an implicit -- I think they would have said there was an explicit threat."[9] (J.A. at 70.) Accordingly, we find that the District Court properly established a sufficient factual basis for Stamps's guilty plea under 18 U.S.C. § 2113(a).

_____

[8] As we noted at oral argument, bank tellers ordinarily do not freely hand over money for no reason; here, the bank teller must have felt some degree of intimidation or else she would not have complied with Stamps's demand.

[9] Although Stamps concedes that he pled guilty to bank robbery under 18 U.S.C. § 2113(a), he argues for the first time on appeal that the District Court should have considered a sentence based on § 2113(b), bank larceny--a charge that does not include an element of violence, force, or intimidation. Stamps's argument in this regard is without merit. In *Gilmore*, this Court noted that "[a] review of the cases on § 2113(b) reveals that this statute is not utilized in cases where individuals present demands to bank tellers. Instead, the bank larceny statute is applicable in cases where persons steal from a bank's automated teller machine ("ATM"); and other thefts from banks not involving a danger of bodily harm." 282 F.3d at 404 (citations omitted).

**B.    The District Court's sentence was reasonable.**

Stamps also challenges his sentence, claiming that the District Court erred by including his career offender status in the calculation of his sentencing range, and, more generally, that the District Court failed to consider the 18 U.S.C. 3553(a) factors adequately.

Under the Guidelines, a defendant qualifies as a "career offender" if (1) he was at least eighteen years-old at the time he committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is a crime of violence; and (3) he has at least two prior felony convictions that were "crimes of violence." U.S.S.G. § 4B1.1(a). The term "crime of violence" is defined by the Guidelines as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that -- (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling . . . ." U.S.S.G. § 4B1.2(a)(2). This Court has recognized that when

> determining whether a particular offense constitutes a . . . "crime of violence" under the Guidelines, [it] employs a categorical approach limited to an examination of the fact of conviction and the statutory definition of the predicate offense. Under this approach, it is not only impermissible, but pointless, for the court to look through to the defendant's actual criminal conduct. Indeed, the categorical approach eliminates the practical difficulties and potential unfairness of a factual approach to each prior conviction.

*United States v. Butler*, 207 F.3d 839, 843 (6th Cir. 2000) (internal citations and quotation marks omitted).

At the sentencing hearing, Stamps implored the District Court to sentence him within a range of 63 to 78 months imprisonment, which represents the advisory Guidelines range without consideration of his career offender status. However, Stamps's current and prior convictions

11

clearly qualify him for a sentencing adjustment as a career offender.  Stamps was 38 years old

when he robbed the Am South Bank and it is undisputed that bank robbery under 18 U.S.C. §

2113(a) qualifies as a crime of violence.  Notably, Stamps concedes on appeal that his prior

burglary of a home and three convictions for bank robbery "technically qualify him for Career

Offender status under the Guidelines."[10]  (Stamps Br. at 16; *see also* U.S.S.G. § 4B1.2 cmt. n.1

(2004) ("crime of violence" includes robbery and burglary of a dwelling).)  Thus, Stamps

concedes that he properly qualified for the career offender enhancement, and, for the reasons

discussed above, the District Court did not err by including Stamps's career offender status under

§ 4B1.1(a) in the calculation of the Guidelines range.  Thus, the applicable advisory sentencing

range was 151-188 months.

Stamps also argues that the District Court failed to properly consider the 18 U.S.C. §

3553(a) factors, and as such, it rendered an unreasonably harsh sentence.  Stamps's primary

contention in this regard is that during the commission of the instant offense, and all others that

comprise his admittedly "extensive" criminal history, (Stamps Reply Br. at 4), he was not

violent.  Rather, when "presented with the opportunity to be violent," Stamps asserts that he

"simply run[s] away."  (J.A. at 64.)  Although the crimes that support his career offender status

"technically qualify as crimes of violence," Stamps asserts that "it is apparent no real use of

violence, or even threat thereof, was utilized."  (Stamps Br. at 17-18.)  Accordingly, Stamps

argues that his career offender status "overrepresent[s]" the seriousness of his criminal history,

and that his lack of violent conduct should have guided the District Court to render a lower

---

[10] Stamps made this same concession to the District Court in his sentencing memorandum.  (J.A. at 22, 58.)

sentence in accordance with its discretion under *United States v. Booker*, 543 U.S. 220 (2005).

At the sentencing hearing, the Government argued that a Guidelines sentence was reasonable, in part because Stamps committed the instant offense only three months after being released from prison for his prior bank robberies. Additionally, the Government warned that a sentence between 63 and 78 months would diminish the seriousness of the instant offense because such a sentence would be shorter than the sentence he received for his previous bank robbery convictions.

This Court reviews criminal sentences for reasonableness, *Booker*, 543 U.S. at 264; *Webb*, 403 F.3d at 383, and credits sentences properly calculated under the Guidelines with a rebuttable presumption of reasonableness, *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). *See also Rita v. United States*, 551 U.S. ---, 2007 WL 1772146, at *6 (June 21, 2007) (holding that "a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines"). Stamps's 170-month sentence was within the Guidelines range of 151 to 188 months, and thus is presumed reasonable.

Contrary to Stamps's assertion, Judge McCalla identified the § 3553(a) factors, and addressed them in detail. *See United States v. Kirby*, 418 F.3d 621, 626 (6th Cir. 2005) (noting that a district court "need not recite the[ § 3553(a)] factors but must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review") (citation omitted). The District Court noted that bank robbery is a serious crime and recognized the need for the court to render a sufficiently long sentence to protect the public from the Defendant's criminal predilections. The District Court expressed its alarm that Stamps committed the instant

13

offense so quickly after he had been released from prison on his prior bank robbery convictions.[11] The District Court rejected Stamps's contention that he never actually used physical violence during the commission of his crimes, noting that someone who is confronted by another person demanding money experiences the threat of violence explicitly or implicitly. With regard to Stamps's contention that he was not armed during the commission of the instant offense, the District Court noted that had he actually used, displayed, brandished or discharged a weapon, the Guidelines calculation would have been much higher.[12]

The District Court acknowledged Stamps's drug problem, but noted that it did not excuse his responsibility for his actions. Finally, the District Court expressly indicated that it considered the appropriate § 3553(a) factors before issuing the within-Guidelines sentence. Judge McCalla noted that he thought 170 months was an appropriate sentence, as "[i]t gives some recognition that you're not the worst guy in the group, . . . but also gives some recognition that you came back in the system awfully quickly, and I think that there are lots of issues that need to be dealt with, and maybe this will begin the process of doing that." (J.A. at 77.) Accordingly, we find that the District Court adequately explained its reasoning for the sentence, and that the sentence imposed was reasonable. Thus, we affirm Stamps's sentence.

---

[11] The PSR indicated that Stamps was released from custody on June 13, 2005, less than four months before he committed the instant offense. (J.A. at 92.)

[12] *See, e.g.*, U.S.S.G. § 2B3.1(b)(2) ("(A) If a firearm was discharged, increase by 7 levels; (B) if a firearm was otherwise used, increase by 6 levels; (C) if a firearm was brandished or possessed, increase by 5 levels; (D) if a dangerous weapon was otherwise used, increase by 4 levels; (E) if a dangerous weapon was brandished or possessed, increase by 3 levels.").

14

**III.**

For the foregoing reasons, the District Court's judgment of conviction and sentence is

hereby **AFFIRMED**.