RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0290p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL OSBORN THOMAS,

*Defendant-Appellant.*

No. 24-2052

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:23-cr-00117-2—Jane M. Beckering, District Judge.

Decided and Filed: October 20, 2025

Before: COLE, KETHLEDGE, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Edward M. Heindel, Cleveland, Ohio, for Appellant. Daniel T. McGraw, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

The court delivered a PER CURIAM opinion. KETHLEDGE, J. (pp. 5–7), delivered a separate concurring opinion.

_____

## OPINION

_____

PER CURIAM. Michael Thomas pled guilty to conspiracy to distribute methamphetamine, and the district court sentenced him to 300 months in prison. He now seeks to vacate his plea and challenge the reasonableness of his sentence. We reject his arguments and affirm.

I.

In 2017, Thomas pled guilty to several state charges, including the delivery of cocaine and methamphetamine, and was sentenced to prison. In late 2019, he was released on parole. Within a few weeks of his release, he had returned to drug trafficking. In June 2022—while investigating a complaint that Thomas had assaulted his wife—police discovered methamphetamine and drug-trafficking paraphernalia in Thomas's house. Thomas was arrested and later charged with various drug offenses. About a year later, Thomas—who was not in custody, but was under police surveillance—dispatched his sister to drive his car to a supplier in Detroit and pick up several kilograms of methamphetamine. On her way back, a Michigan state trooper stopped the car, found the drugs, and arrested her. A federal grand jury thereafter indicted Thomas and his sister for conspiracy to distribute methamphetamine and cocaine, among other charges. Thomas's sister pled guilty to the conspiracy charge, and Thomas—on the morning his trial was scheduled to begin—agreed to do so as well.

At Thomas's plea hearing, the district court explained to Thomas the various rights—e.g., the right to a jury trial, the right to confront witnesses, and so on—that he would waive by pleading guilty. *See generally* Fed. R. Crim. P. 11(b)(1)(B)-(F). The court also asked Thomas whether he understood those rights; Thomas said he did. Thomas then formally changed his plea to guilty.

At that point, the court asked the prosecutor to "put on the record" any "pertinent" terms of the plea agreement. The prosecutor said the agreement included a "full appellate waiver," which meant "that in exchange for the promises that the government is making in this plea agreement, the defendant agrees to waive his right to appeal." The prosecutor added that "[t]he only exceptions that he would be allowed to appeal for are laid out in paragraph 13"; but the prosecutor did not explain what those exceptions were. The court then inquired at some length as to whether Thomas understood his plea agreement, though the court did not ask about the appeal waiver specifically; Thomas said he did understand the agreement. The court accepted Thomas's guilty plea.

Thereafter, during Thomas's sentencing hearing, the court accepted the parties' plea agreement, under which Thomas would receive between 120 and 360 months in prison. The court applied two enhancements and determined that the guidelines advised a life sentence; but the court imposed a sentence of 300 months in prison. This appeal followed.

II.

Thomas argues that the court violated Rule 11 in two ways during his plea hearing. Thomas objected on neither ground during the hearing, so we review only for plain error. *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005).

First, he argues that—during his plea colloquy, when the court was describing the rights Thomas would waive by pleading guilty—the court should have confirmed Thomas's understanding of each particular right as the court described them, rather than (as the court did) describing all the relevant rights and then asking Thomas whether he understood them. But Rule 11(b) by its terms does not require the seriatim approach that Thomas insists on here. Nor does our caselaw require it. Hence on this point Thomas has not shown any plain error.

Second, he argues that the district court violated Rule 11(b)(1)(N)—which requires that "the court inform the defendant" of "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack [his] sentence"—on two grounds. His first contention is not that the district court violated the rule by having the prosecutor fully explain the appeal waiver; he concedes that we have held that the rule is "not violated" when a prosecutor does so. *United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006). Instead, he contends that the prosecutor violated the rule because he omitted an explanation of the waiver's exceptions, and thus failed to explain the waiver "adequately and correctly." We have also held, however, that the rule is not violated when the record shows a defendant was "informed of and understood his rights." *United States v. Sharp*, 442 F.3d 946, 952 (6th Cir. 2006). Thomas does not argue that he was not informed of, or did not understand, the appeal waiver. Moreover, ample evidence shows that he did understand it. Thomas's plea agreement described the appeal rights that he would waive. He acknowledged at the plea hearing that he had been given the agreement weeks before he changed his plea; that he had discussed all of it with his attorney, who certified the same; and

that he understood everything in the agreement and was not confused about what it meant. *See Murdock*, 398 F.3d at 498. Although the prosecutor did not explain the exceptions to the appeal waiver—instead merely referring to their existence—Thomas confirmed that he understood the plea agreement in its entirety after the prosecutor summarized the waiver. He has therefore not shown an error that is "obvious or clear" for plain-error review. *United States v. Michael*, 576 F.3d 323, 328 (6th Cir. 2009).

His second contention—that the court violated the rule by failing to have the prosecutor explain the waiver before allowing him to plead guilty—likewise fails because he neither argues nor has shown that he did not understand the plea agreement. Thomas has thus not met his burden to make out a violation of Rule 11(b)(1)(N). We therefore enforce the appeal waiver in his plea agreement. *See United States v. Presley*, 18 F.4th 899, 903 (6th Cir. 2021).

Thomas also argues that the court erred when it applied two sentencing enhancements to calculate his guidelines range. But these arguments are barred by his appeal waiver. We therefore do not consider them. *United States v. Milliron*, 984 F.3d 1188, 1193 (6th Cir. 2021).

The district court's judgment is affirmed.

_____

## CONCURRENCE

_____

KETHLEDGE, Circuit Judge, concurring.  I join the court's opinion because it correctly applies our precedents as they come to us here.  I write separately to explain why those precedents misapply Criminal Rule 11(b)(1)(N)—indeed they rewrite it.

Rule 11 provides in relevant part:

**(b) Considering and Accepting a Guilty or Nolo Contendere Plea.**

**(1)** *Advising and Questioning the Defendant.*  Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally and in open court.  During this address, *the court must inform the defendant of*, and determine that the defendant understands, the following:

. . .

(N) *the terms of any plea-agreement provision waiving the right to appeal* or to collaterally attack the sentence[.]

Fed. R. Crim. P. 11(b)(1)(N) (emphasis added).

The Rule's text could not be clearer:  "*the court must* inform the defendant of" the terms of any agreement "waiving the right to appeal" his sentence.  That means the court *may not* outsource that task to the prosecutor.  Not a word of this provision is hard to understand; nor is the thing that it commands—inform the defendant in open court of the terms of his appeal waiver—hard for the court to do.  And all the Federal Rules have "fully the force of law."  *In re National Prescription Opiate Litigation*, 956 F.3d 838, 844 (6th Cir. 2020).  The court's obligation therefore is simply to do what the Rule says.

Yet our court has construed this very same provision to approve—as actual *compliance* with the rule—judicial actions or omissions that plainly violate it.  I have no quarrel with our actual holding in *United States v. Murdock*, where we held that the district court had violated Rule 11(b)(1)(N) when the court failed even to mention the defendant's appeal waiver during his plea colloquy.  398 F.3d at 497.  That raised the question whether the violation had affected the

defendant's "substantial rights"; and we held that it had, because the record showed "no functional substitute" for compliance with the Rule. *Id.* Thus we refused to enforce the appeal waiver. In dictum, we suggested that—as a "functional substitute" for compliance with the Rule—"the prosecutor in summarizing the key elements of the agreement might adequately address the waiver." *Id*. at 497-98.

A year later, however, we held that having a prosecutor (rather than the court) recite the terms of an appeal waiver was not only harmless, but indeed was no error at all. *United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006) (holding that on those facts "Rule 11(b)(1)(N) was not violated"). Thus, we held, that the prosecutor had done what the Rule says "the court must" do was good enough for compliance with the Rule. And about a month later—citing *Wilson*—we made the same mistake, holding that "an explanation of the appellate-waiver provision by the prosecutor is sufficient to satisfy Rule 11 so long as the court ascertains that the defendant understands the provision." *United States v. Sharp*, 442 F.3d 946, 952 (6th Cir. 2006).

Every word of the Criminal Rules (and all the other Federal Rules of court) is carefully chosen after a thorough process of deliberation and review by two different committees (Criminal Rules and Standing)—which themselves include judges, leading practitioners, and expert staff—and whose work is then reviewed by both the Supreme Court and Congress. The provision at issue here directs the court to determine *first hand* that the defendant understands the rights he is waiving during the plea colloquy—and not by merely asking him. Instead, the Rule prescribes that "the court must address the defendant personally in open court"; that the court itself "must inform" the defendant of the specific rights he is waiving; and that the court must then "determine that the defendant understands" those rights, by all the means—verbal and nonverbal—that an in-person engagement uniquely provides.

For that process of first-hand engagement and assessment, half measures—like an assurance that the defendant's counsel explained the plea agreement to him, or taking on faith a defendant's self-assessment of his understanding—are a sorry substitute. So too is having the prosecutor do what Rule 11 expressly says the court must do. The prosecutor is the person who has sought all along to send the defendant to prison; the district judge, by contrast, is the only impartial actor in the courtroom. The defendant is likely to trust and listen to the judge more

carefully than he would the prosecutor.  And meanwhile the Criminal Rules themselves embody the experience of generations if not centuries of criminal practice (as with the grand jury, for example).  We know that certain procedures have stood the test of time; we cannot always articulate why.  And so when we discard the Rules' prescriptions in favor of ad-hoc rationalizations—e.g., about the court and prosecutor being fungible for certain purposes—we do so at our peril.  Indeed, in this case, the prosecutor did not even bother to describe the handful of "exceptions" to Thomas's appeal waiver; the prosecutor simply said there were some.  In legal process as in life, our disregard for supposed "formalities" often leads to a degradation of the process itself.

Rule 11 is one of the most important safeguards in all of criminal procedure.  But as to the provision at issue here, at least, our precedents embrace a hollowed-out version of it.  In an appropriate case I would welcome reconsidering those precedents en banc.